*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PETITION OF MUSKEGON COUNTY TREASURER FOR FORECLOSURE.

---

MUSKEGON COUNTY TREASURER,

Petitioner-Appellee,

v

KARI BEEMAN, LINDA HUGHES, JOHNNY CHAPMAN, STEPHANIE HULKA-BERTOIA, and SHEDRICK MI, LLC,

Respondents-Appellants.

FOR PUBLICATION
October 26, 2023
9:00 a.m.

No. 363764
Muskegon Circuit Court
LC No. 2020-002044-CZ

---

Before: SWARTZLE, P.J., and O'BRIEN and FEENEY, JJ.

SWARTZLE, P.J.

Although self-executing, the Takings Clause must be read within the context of statutory protections available to a property owner. In response to our Supreme Court's decision in *Rafaeli, LLC v Oakland Co*, 505 Mich 429; 952 NW2d 434 (2020), our Legislature enacted a statutory framework by which a former owner of real property could claim the proceeds that remained, if any, after a foreclosing government sold the property and satisfied that owner's tax debt and related fees. This framework has several salient features, including pre-sale notice by the foreclosing government; a clear explanation of the former owner's rights and responsibilities; and an express deadline by which the former owner must respond.

Respondents challenge the adequacy of this statutory framework and how it was applied here by the country treasurer. As we explain, this statutory framework comports with procedural due process and other constitutional requirements. Furthermore, the county treasurer followed the law by providing the required notices. Unfortunately, respondents did not similarly follow the law, and because they did not, they forfeited any right to the proceeds that remained after the satisfaction of their tax debts.

-1-

## I. BACKGROUND

### A. STATUTORY FRAMEWORK POST-*RAFAELI*

An overview of recent Supreme Court case law and our Legislature's response will help frame the arguments on appeal. Briefly, our Supreme Court held in *Rafaeli* that a former owner of real property sold at a tax-foreclosure sale for more than what was owed in taxes, interests, penalties, and fees had "a cognizable, vested property right to the surplus proceeds resulting from the tax-foreclosure sale." *Id*. at 484. This right continued to exist after fee simple title to the properties vested with the foreclosing governmental unit (FGU). The FGU's "retention and subsequent transfer of those proceeds into the county general fund amounted to a taking of plaintiffs' properties under Article 10, § 2 of [Const 1963]," and the former owners were entitled to just compensation in the form of the return of the surplus proceeds. *Id*. at 484-485. When the Court decided *Rafaeli*, the General Property Tax Act (GPTA), MCL 211.1 *et seq*., did not provide a mechanism by which former property owners could recover their surplus proceeds.

In response to *Rafaeli*, our Legislature passed 2020 PA 255 and 2020 PA 256, which were given immediate effect on December 22, 2020. These acts purported to "codify and give full effect to the right of a former holder of a legal interest in property to any remaining proceeds resulting from the foreclosure and sale of the property to satisfy delinquent real property taxes" under the GPTA. 2020 PA 256, enacting § 3. At issue in the current appeal is MCL 211.78t, a provision added to the GPTA by 2020 PA 256. Section 78t provides the statutory means for a former property owner to claim and receive any applicable "remaining proceeds" from the tax-foreclosure sales of that person's former properties.

A former property owner whose properties sold at a tax-foreclosure sale after July 17, 2020, the date the *Rafaeli* decision was issued, and who intends to recover any surplus proceeds from the sale, is required to notify the FGU of that intent by submitting Form 5743 by the July 1st immediately following the effective date of the foreclosure of the property. Form 5743 must be notarized and filed with the FGU "by personal service acknowledged by the FGU or by certified mail, return receipt requested." MCL 211.78t(2). A property owner who satisfies these requirements becomes a "claimant."

In the January immediately following the sale or transfer of a foreclosed property, the FGU notifies the claimant about the total amount of remaining proceeds or the amount of shortfall in proceeds, among other things. MCL 211.78t(3)(i). The notice must explain that the claimant may file a motion in the circuit court in the foreclosure proceeding to recover any excess proceeds. MCL 211.78t(3)(k). A claimant has from February 1st to May 15th of the year immediately following the tax-foreclosure sale to file the motion. MCL 211.78t(4).

At the end of this claim period, the FGU responds by: (i) verifying that the claimant timely filed Form 5743, and (ii) identifying any remaining proceeds. MCL 211.78t(5)(i). Specifically, the FGU files with the circuit court proof of service of the notice that the FGU mailed to the claimant in January, along with additional information identifying the property and the details of its sale, including the amount of any remaining proceeds or shortfall in proceeds. MCL 211.78t(5)(i).

The circuit court then holds a hearing to determine the relative priority of the claimant's interest in any excess value. After requiring the payment of a sales commission to the FGU of 5% of the amount for which the property was sold, the circuit court then "allocate[s] any remaining proceeds based on its determination of priority, and order[s] the FGU to pay the remaining proceeds" to the claimant. MCL 211.78t(9). The FGU has 21 days to pay the amounts ordered by the circuit court. MCL 211.78t(10).

## B. FACTS AND PROCEEDINGS

The material facts in this appeal are not in dispute. Respondents owned real properties in Muskegon County and fell behind on their property taxes. Petitioner, acting as the FGU, foreclosed their properties, effective March 31, 2021. None of the respondents timely filed Form 5743 conveying an intent to claim an interest in any excess proceeds. The properties were sold at auction and the proceeds applied to respondents' delinquent property taxes, interests, penalties, and fees. Each property sold for significantly more than its respondent-owner owed.

Subsequently, from December 2021 to April 2022, each respondent submitted an untimely Form 5743. Petitioner rejected the forms because they were filed after "the July 1 immediately following the [March 31, 2021] effective date of the foreclosure of the property." MCL 211.78t(2).

In May 2022, respondents moved separately to recover the remaining proceeds under MCL 211.78t(4). Petitioner opposed the motions, arguing that respondents were barred from seeking distribution of the remaining proceeds because they did not file Form 5743 before July 1, 2021. Respondents replied, raising several arguments pursued now on appeal.

The circuit court held a hearing on respondents' motions. Ruling from the bench, the circuit court found that the requirement of filing a notice of intent (i.e., Form 5743) by July 1st was clear and unambiguous and had to be enforced as written and that 2020 PA 256 afforded adequate due process. The trial court denied respondents' motions, and respondents appealed by leave granted. *In re Petition of Muskegon Co Treasurer for Foreclosure*, unpublished order of the Court of Appeals, entered February 2, 2023 (Docket No. 363764).

## II. ANALYSIS

On appeal, respondents claim that the procedures described in MCL 211.78t are not the exclusive means for recovering surplus proceeds, and petitioner engaged in an unlawful taking of their property. They also contend that the annual July 1st deadline for filing a notice of intent is unenforceable, they were not provided adequate due process, and the entire statutory scheme violates the Supremacy Clause. As explained, each of these arguments fails.

## A. STANDARD OF REVIEW AND PRESERVATION

In reviewing the circuit court's resolution of a motion under MCL 211.78t, this Court reviews factual findings for clear error. *In re Tato*, 339 Mich App 654, 661; 984 NW2d 849 (2021). With respect to questions of law—including the interpretation and application of constitutional provisions and statutes—this Court reviews these de novo. *Kilpatrick v Lansing*

*Community College*, __ Mich App __, __; __ NW2d __ (2023) (Docket No. 361300); *In re Contempt of Murphy*, __ Mich App __, __; __ NW2d __ (2023) (Docket No. 360560).

Respondents did not squarely raise their claims involving exclusivity of the statutory-claim scheme or the harshness/unreasonableness of the July 1st deadline in the circuit court or the questions presented on appeal. Under our raise-or-waive jurisprudence in ordinary civil appeals, these claims are deemed waived and not preserved for appellate review. *Tolas Oil & Gas Exploration Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 5. The Court will, however, overlook respondents' failure to preserve because the claims involve questions of law with undisputed facts and their resolution is necessary for proper resolution of the appeal. *Id*.

## B. EXCLUSIVITY OF MCL 211.78t

The Court begins with respondents' claim that the process set forth in MCL 211.78t is not the exclusive means for recovering excess proceeds. As noted earlier, our Legislature enacted 2020 PA 256 in response to *Rafaeli*, and the statute was meant "to codify and give full effect to the right of a former holder of a legal interest in property to any remaining proceeds resulting from the foreclosure and sale of the property to satisfy delinquent real property taxes under the [GPTA]." 2020 PA 256, enacting § 3. And, with specific respect to exclusivity, our Legislature's own words could hardly be clearer: Section 78t "is the *exclusive mechanism* for a claimant to claim and receive any applicable remaining proceeds under the laws of this state." MCL 211.78t(11) (emphasis added). Giving "exclusive" its plain, ordinary meaning, MCL 8.3a, our Legislature intended MCL 211.78t as the sole mechanism by which a former owner of foreclosed property could obtain any proceeds remaining from the tax-foreclosure sale and satisfaction of the owner's delinquent taxes and associated costs.

But, respondents argue, it is unclear what interest 2020 PA 256 was intended to protect. Whereas *Rafaeli* referred to "surplus proceeds," see, e.g., 505 Mich at 437, MCL 211.78*l*(1) refers to "any proceeds," and MCL 211.78t refers to "remaining proceeds."

With respect to "any proceeds," MCL 211.78*l*(1) addresses how owners of extinguished interests in property sold or transferred at a tax-foreclosure sale may recover the property or their interests in the property. It states that "[a]n action to recover any proceeds from the sale or transfer of property foreclosed for nonpayment of real property taxes under this act must be brought as provided under section 78t." MCL 211.78*l*(1). "Any," construed according to its "common and approved usage," MCL 8.3a, indicates "one or some indiscriminately of whatever kind," "one, some, or all indiscriminately of whatever quantity," or "unmeasured or unlimited in amount, number, or extent." *Merriam-Webster's Collegiate Dictionary* (11th ed), p 56. "Any proceeds" is sufficiently broad to suggest that the Legislature intended to include proceeds of any kind in the category.

Moreover, MCL 211.78*l* itself directs persons who wish to recover proceeds from the sale or transfer of foreclosed property to MCL 211.78t. No one could reasonably read "any proceeds" in MCL 211.78*l* and conclude that it does *not* include the "remaining proceeds" addressed in MCL 211.78t. "Any proceeds," as used in MCL 211.78*l* does not irreconcilably conflict with the use of

"remaining proceeds" in MCL 211.78t, nor have respondents shown that "any proceeds" or "remaining proceeds," are equally susceptible to more than a single meaning.

Rather than an ambiguity between "any proceeds" and "remaining proceeds," the real gravamen of respondents' position appears to be that, in their opinion, the "remaining proceeds" of MCL 211.78t means something less than the "surplus proceeds" of *Rafaeli* because a 5% sales commission can be retained by the FGU under the statutory scheme. In effect, with 2020 PA 256, our Legislature did not faithfully codify the full holding of *Rafaeli*, according to respondents. This argument, however, misses the mark, as it is directed to the question whether our Legislature actually addressed the constitutional infirmity of the prior GPTA. The argument has no bearing on the separate question of whether our Legislature intended its amendments to be the exclusive mechanism for a former property owner to pursue a constitutional claim.

Respondents also attempt to avoid the exclusivity of MCL 211.78t by arguing that the section does not apply to all former property owners but only to "claimants," i.e., to those who choose to seek remaining proceeds in accordance with MCL 211.78t. They argue that use of the word "may" in MCL 211.78t(1) denotes permissiveness and indicates that former property owners could have pursued their surplus proceeds as claimants under MCL 211.78t but were not required to do so. Only if they chose to use MCL 211.78t as the means of recovering their surplus proceeds did they have to comply with subsection (2) by filing a notice of intent by July 1, 2021.

This argument fails for several reasons: First, respondents *did* try to recover their remaining proceeds under MCL 211.78t but failed to satisfy its requirements, so it is not clear that they even have standing to make the claim on appeal. Second and more importantly, it is the case that "may" generally denotes discretion. *Walters v Nadell*, 481 Mich 377, 383; 751 NW2d 431 (2008). Former property owners who owe more in taxes, penalties, and fees than their homes are worth may exercise their discretion by *not* submitting a notice of intent. See *Rafaeli*, 505 Mich at 447 (noting that "sale proceeds are often insufficient to cover the full amount of delinquent taxes, interest, penalties, and fees related to the foreclosure and sale of the property"). Thus, respondents are correct that they had the choice to pursue their claims in accordance with MCL 211.78t. The flaw in their argument is their assumption that the alternative to pursing a claim under MCL 211.78t was to pursue a claim by some other means—rather, their alternative was not to claim an interest in the foreclosed property in the first place.

The specific language of MCL 211.78t indicates our Legislature's intent for the statute to serve as the sole mechanism by which former property owners can recover proceeds remaining after the sale or transfer of their foreclosed properties and the satisfaction of their tax debt and related costs. The use of "remaining proceeds" and "any proceeds" does not create an ambiguity, and respondents have not identified any other means provided by the GPTA for them to recover excess proceeds.

C. THE "HARSH-AND-UNREASONABLE" EXCEPTION

In the alternative, respondents argue that the relatively short timeframe for pursuing a claim is harsh and unreasonable. The "harsh-and-unreasonable" exception has been applied to statutes of limitations and notice requirements when the consequences of strictly enforcing a time period are so harsh and unreasonable that it "effectively divested plaintiffs of the access to the courts

intended by grant of the substantive right." *Rusha v Dep't of Corrections*, 307 Mich App 300, 311; 859 NW2d 735 (2014) (cleaned up).

*Rusha* provides an example of factual circumstances that did not warrant application of the exception. At issue in *Rusha* was whether failure to file the six-month notice required by MCL 600.6431(1) barred the plaintiff's constitutional-tort claim against the government defendant. The Court of Claims ruled that the notice requirement did not apply to constitutional torts. This Court reversed, explaining that "it was well established that the Legislature may impose reasonable procedural requirements, such as a limitations period, on a plaintiff's available remedies even when those remedies pertained to alleged constitutional violations." *Id*. at 307 (cleaned up). Further, the Legislature's ability "to set reasonable procedural requirements is broadly construed." *Id*. at 308. "The only limitation, unless otherwise expressly indicated, on legislation supplementary to self-executing constitutional provisions is that the right guaranteed shall not be curtailed or any undue burdens placed thereon." *Id*. The imposition of a notice requirement on the self-executing prohibition against cruel-or-unusual punishment was a "minimal procedural burden," and "it [could] hardly be said that application of the six-month notice provision of § 6431(3) effectively divested plaintiff of the ability to vindicate the alleged constitutional violation or otherwise functionally abrogated a constitutional right." *Id*. at 308, 312. Providing statutory notice required only ordinary knowledge and diligence. See *id*. at 312-313.

By contrast, *Mays v Snyder*, 323 Mich App 1; 916 NW2d 227 (2018), provides an example of factual circumstances that warrant application of the harsh-and-unreasonable circumstances exception. The context for *Mays* was the Flint River water crisis. The plaintiffs sued the government defendants without having filed the notice of intention to file a claim required by MCL 600.6431, and the defendants moved for summary disposition under MCR 2.116(C)(4) (court lacks subject-matter jurisdiction) and (C)(7) (immunity provided by law). The Court of Claims denied the defendants' motion. *Id*. at 23-24. Affirming the denial, this Court reasoned that summary disposition "would deprive plaintiffs of access to the courts and effectively divest them of the ability to vindicate the constitutional violations alleged." *Id*. at 35. Also significant were the plaintiffs' allegations that several state actors purportedly took affirmative actions to conceal the hazardous nature of the Flint River water, as well as any event that would trigger the running of the six-month period. As a consequence of this alleged concealment, the burden on the plaintiffs to meet the filing requirement would have been more than minimal, as "it would have required clairvoyant recognition of circumstances that the state was working to convince the public did not actually exist." *Id*. at 36 n 9.

The present case resembles *Rusha* more than *Mays*. Unlike the state actors in *Mays*, there are no allegations that petitioner tried to conceal from respondents any information necessary to claim an interest in proceeds remaining after the tax-foreclosure sale of their properties and satisfaction of their tax debt and associated costs. Respondents have not disputed that they received several notices[1] involving foreclosure or that they received notices after their properties

---

[1] Respondents assert in passing on appeal that it is unclear whether they had actual notice of the July 1st filing deadline, as petitioner made no attempt to prove that they did. Respondents did not

were foreclosed informing them that their properties may be sold for more than the amount that they owed to the FGU; anyone who had an interest in the property before foreclosure had a right to file a claim for remaining proceeds; and notice of an intent to claim excess proceeds had to be submitted before July 1, 2021. The same notices identified the form that respondents had to file (Form 5743), and the notices told them how to obtain and submit the form. As was the case in *Rusha*, the burden to submit Form 5743 was minimal and required only ordinary knowledge and diligence. Respondents suggest that completing Form 5743 was more than minimally burdensome because it had to be notarized and personally delivered or sent by certified mail. The notice required under MCL 600.6431 also had to be notarized, but the *Rusha* Court did not appear to consider that requirement unduly burdensome, *Rusha*, 307 Mich App at 310, 312, 313, and neither do we here.

Respondents argue that the harsh consequences of missing the deadline make strict enforcement of the deadline unreasonable. This could have also been said of the plaintiff in *Rusha*, however, whose failure to file the minimally burdensome notice required by MCL 600.6431 cost him the opportunity to take legal action to vindicate the constitutional right to be free from cruel-or-unusual punishment. The notice requirement affected the *Rusha* plaintiff's remedy; it did not deprive him of his constitutionally protected, substantive right. MCL 600.6431 "supplement[ed] the constitutional protection at issue by placing a reasonable, albeit minimal, burden on a plaintiff to advise the state of potential claims." *Rusha*, 307 Mich App at 313.

The notice requirement of MCL 211.78t(2) is not a presuit requirement, and its purpose differs from that of the notice requirement in MCL 600.6431(1). Nevertheless, similar to MCL 600.6431, MCL 211.78t(2) imposes a reasonable, minimal burden on former owners to advise the FGU of their intent to exercise that right by claiming any remaining proceeds. In the present case, respondents had a constitutionally protected right to proceeds remaining after satisfaction of their tax debt and associated costs, and they had an opportunity to begin the process of recovering those proceeds through the minimally burdensome completion of a single-page form. The circumstances of this case do not justify application of the harsh-and-unreasonable consequences exception to the statutory notice requirement of MCL 211.78t(2).

## D. DUE PROCESS

The Court now moves to respondents' constitutional arguments, beginning with due process. Under both the Michigan and federal Constitutions, no person may be deprived of life, liberty, or property without due process of law. US Const, Am V; US Const, Am XIV; Const 1963, art 1, § 17. "These [due-process] protections apply to vested property interests." *Souden v Souden*, 303 Mich App 406, 413; 844 NW2d 151 (2013). Our Supreme Court held in *Rafaeli*, 505 Mich at 484, that a former property owner has "a cognizable, vested property right to the surplus proceeds resulting from the tax-foreclosure sale of their properties."

---

argue lack of notice in the circuit court. In fact, respondents' attorney stated during the August 5, 2022 motion hearing: "I'm not saying no notice. I'm just simply saying it's not sufficient notice."

Due process is not a one-size-fits-all concept. It is, rather, "flexible and calls for such procedural protections as the particular situation demands." *Mathews v Eldridge*, 424 US 319, 332, 334; 96 S Ct 893; 47 L Ed 2d 18 (1976). Courts generally consider three factors to determine what is required by due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [*Id*. at 335.]

The private interest affected by an FGU's compliance with MCL 211.78t is a former property owner's right to the proceeds remaining after the tax-foreclosure sale and the satisfaction of tax debt and associated costs. If the procedures are followed, the risk of an erroneous deprivation is nil—when a former property owner submits a timely and otherwise proper Form 5743, the FGU will be on notice that the former owner intends to exercise the right to proceeds, and the FGU will be required to notify that person of any proceeds remaining after satisfaction of the tax delinquency as well as how to file a claim. MCL 211.78t(3). Finally, as for the government interest involved, the FGU has an interest in having taxes paid in full as well as clarifying within a reasonable time period who has the right to any surplus from forfeited properties.

The statutory scheme set up by our Legislature and followed by petitioner satisfies due process. The notices informed respondents of their right to claim any excess proceeds and told them how to express their intent to exercise that right. First, a former owner is given pre-deprivation notice of a foreclosure and sale to satisfy unpaid taxes and associated costs. Second, the former owner is given several months to file a form indicating an intent to seek the remaining proceeds (if any) that might exist after the sale and satisfaction of taxes and related costs. If the statutory scheme is followed by the former owner and FGU, there will be no constitutional deprivation like the one in *Rafaeli*. This is all that due process requires in this situation.

Respondents retort, however, that the statutory scheme is deficient because the FGU has discretion whether to send a notice of existing surplus to a former property owner. This is, however, a false description of the statutory scheme. As already explained, the statutory scheme mandates that an FGU *must* provide, at the time a judgment of foreclosure is effective, an explanation to *all* persons with an interest in property of their right to claim any proceeds remaining after the sale and satisfaction of tax debt. MCL 211.78g(2), MCL 211.78i(7). *If* a former property owner submits a timely Form 5743, *then* the FGU *must* pay out any remaining proceeds to that person in accordance with MCL 211.78t. The FGU has no discretion under this statutory framework.

Rather, what respondents really want is different, i.e., post-sale, process. Specifically, they contend, the FGU should have notified each of them after the respective tax-foreclosure sale. Implicit in this argument is the necessary corollary that along with a post-sale notification, the Legislature should have also provided a means for a prior property owner to claim excess proceeds even if that owner failed to provide timely notification. Although some states have adopted such

systems, see Jenna Christine Foos, *State Theft in Real Property Tax Foreclosure Procedures*, 54 Real Prop Tr & Est LJ 93, 100 (2019), that is not the system adopted by our Legislature.  So long as the statutory scheme adopted by our Legislature comports with due process—as MCL 211.78t does—whether such a scheme makes sense or not, or whether a "better" scheme could be devised, are policy questions for the Legislature, not legal ones for the Judiciary.  *D'Agostini Land Co LLC v Dep't of Treasury*, 322 Mich App 545, 560; 912 NW2d 593 (2018).

Respondents also make a rather technical argument that the notices were inadequate because they purportedly did not specifically identify the precise property to be taken, i.e., the remaining surplus.  Respondents interpret *Rafaeli* as holding that a former property owner's right to recover remaining proceeds arises only *after* the sale; therefore, only notices that an FGU sends after a tax-foreclosure sale, identifying the precise excess proceeds available to the former property owner, can satisfy due process.

Contrary to respondents' argument, however, the right at issue here is not a novel or uncertain one that springs into existence only after a forfeiture and sale.  The right to collect proceeds remaining after the tax-foreclosure sale of property existed under English common law, was "firmly established in the early years of Michigan statehood," and was a common-law right routinely understood to exist by the ratifiers of the Michigan Constitution in 1963.  *Rafaeli*, 505 Mich at 462-464, 472.  Although respondents may not have had a *compensable* claim before the tax-foreclosure sale generated a surplus, the right to collect excess proceeds existed before the tax-foreclosure sale.  As the *Rafaeli* Court explained, "While plaintiffs' takings claim was not compensable until their properties sold for an amount in excess of their tax debts, that lack of an immediate right to collect the surplus proceeds does not mean that plaintiffs had no right to collect the surplus proceeds at all."  *Id*. at 476-477  Petitioner's notices were not rendered inadequate by the fact that they were sent to respondents before the tax-foreclosure sale—if anything, the earlier notice was an even greater safeguard of respondents' rights than the post-sale notice that they advocate for now.

## E.  TAKINGS

Finally, respondents argue that, by imposing an administrative prerequisite on recovery, MCL 211.78t impinges on respondents' vested property interests.  They maintain that this results in a classic taking and requires just compensation under Const 1963, art 10, § 2, and the Fifth Amendment to the federal Constitution, as applied to the states through the Fourteenth Amendment.  The 5% sales commission is also a taking, in their opinion.  As a result, they argue that MCL 211.78t must be considered preempted by federal law and rendered invalid by the Supremacy Clause.

In addition to the Takings Clauses and Supremacy Clause, respondents also couch these arguments in terms of substantive due process.  We reject this resetting of respondents' arguments.  When, as here, "a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."  *United States v Lanier*, 520 US 259, 272 n 7; 117 S Ct 1219; 137 L Ed 2d 432 (1997).

Considering first the takings argument, the Michigan Constitution prohibits the government from taking private property for public use "without just compensation being first made or secured in a manner prescribed by law." Const 1963, art 10, § 2. "Although the courts of this state have applied the state and federal Takings Clauses coextensively in many situations, this Court has found that Const 1963, art 10, § 2 offers broader protection than do US Const, Ams V and XIV." *AFT Mich v Michigan*, 497 Mich 197, 217; 866 NW2d 782 (2015) (citation omitted). With that said, respondents have not argued that Const 1963, art 10, § 2 should be applied any differently than the federal Takings Clause; therefore, this Court need "not inquire further whether it would be proper to do so." *Id*. at 218. Accordingly, we will consider the two clauses in tandem for purposes of this appeal.

Although not binding on this Court's interpretation of Michigan's Constitution, the federal Supreme Court's decision in *Nelson v City of New York*, 352 US 103; 77 S Ct 195; 1 L Ed 2d (1956), applying the federal Takings Clause, provides helpful guidance. The relevant issue in *Nelson*, 352 US at 109, was whether the City's retention of surplus proceeds that far exceeded the value of a property owner's delinquent water charges constituted a taking of private property without just compensation. The owner owed $814.50, and his property was assessed at $46,000. The City satisfied the statutory-notice requirements, and, when the owner did not file a timely answer in the foreclosure procedure asserting that the value of his property exceeded the amount of his debt, the court entered a foreclosure by default and the City obtained title to the property. *Id*. at 106, 110. The owner filed an action to recover the surplus proceeds, arguing, among other things, that retention of the proceeds constituted an unconstitutional taking without just compensation. *Id*. at 109. The Supreme Court disagreed, holding that there was no compensable taking when there was a statutory path for property owners to recover surplus proceeds, but the property owners failed to avail themselves of that procedure. *Id*. at 110.

The present case is similar to *Nelson*. Petitioner provided respondents with notice that adequately informed them of the steps to take to recover any proceeds that remained after the tax-foreclosure sale of their properties and the satisfaction of their tax debts and associated costs. The first step toward recovery was the minimally burdensome requirement of informing the FGU of the intent to assert a claim for any excess proceeds through the timely submission of Form 5743. Respondents did not take this action. Following the reasoning of the *Nelson* Court, respondents did not suffer a compensable taking.

Respondents contend that *Nelson* is inapplicable to the present case because 2020 PA 256 infringes on a constitutional guarantee. Respondents have failed to show, however, how the minimally burdensome procedures described in MCL 211.78t infringe on the right to collect excess proceeds. Respondents also assert that the *Rafaeli* Court considered the impact of *Nelson* and rejected its application in this instance.

The *Rafaeli* Court did not find *Nelson* helpful because *Nelson* did not speak to the factual situation in *Rafaeli*; it did not tell our Supreme Court "what occurs when the statutes governing foreclosure make no mention of, or expressly preclude, a divested property owner's right to the surplus proceeds, but the divested property owner establishes a property right to the surplus proceeds through some other legal source, such as the common law." *Rafaeli*, 505 Mich at 461. *Nelson* did not provide guidance because the statutes governing foreclosure in *Rafaeli* did not

acknowledge former property owners' rights to recover surplus, let alone provide a means for recovery.

Nor did *Rafaeli* "prevent[] the Legislature from enacting legislation that would require former property owners to avail themselves of certain procedural avenues to recover surplus proceeds." *Rafaeli*, 505 Mich at 473 n 108. Just the opposite—the Court merely held "that the Legislature may not write this constitutionally protected vested property right out of existence." *Id*. In response to *Rafaeli*, our Legislature rectified this constitutional infirmity with 2020 PA 256, and respondents have not shown that the act wrote their constitutionally protected property rights out of existence by imposing a notice requirement.

Respondents urge this Court to follow a recent decision of the federal Supreme Court decision of *Tyler v Hennepin Co, Minnesota*, ___ US ___; 143 S Ct 1369; ___ L Ed 2d ___ (2023). *Tyler* is not, however, factually similar to the present case; rather, it is similar to *Rafaeli*. Hennepin County sold Tyler's home for $40,000 to satisfy a $15,000 tax bill and kept the $25,000 surplus proceeds. At issue was whether this constituted an unconstitutional taking in violation of the Fifth Amendment. *Tyler*, ___ US at ___; 143 S Ct at 1373. Minnesota argued that Tyler had no property interest in the surplus proceeds under a 1935 law that purported to extinguish that property interest by "providing that an owner forfeits her interest in her home when she falls behind on her property taxes." *Id*. at ___; 143 S Ct at 1376. The Supreme Court held that Minnesota had the power to sell Tyler's home to recover unpaid property taxes, "[b]ut it could not use the toehold of the tax debt to confiscate more property than was due." *Id*. The Court held that Minnesota had committed "a classic taking," and that Tyler had stated a claim under the Takings Clause and was entitled to just compensation. *Id*. The Supreme Court noted that *Tyler* differed from *Nelson* because "Minnesota's scheme provide[d] no opportunity for the taxpayer to recover the excess value; once absolute title has transferred to the State, any excess value always remains with the State." *Id*. at ___; 143 S Ct at 1379. Rather, because Michigan now provides an opportunity for respondents to recover the excess value of their property, *Tyler* does not compel a different outcome here.

Respondents separately argue that the 5% sales commission is an unconstitutional taking because it goes beyond the delinquent taxes, interest, penalties, and fees reasonably related to the foreclosure and sale of the property. This Court need not consider the claim, however, because respondents were never subject to the sales commission, given their failure to make a valid claim in the first place.

Finally, as for the Supremacy Clause, it is plainly not applicable here. Respondents seem to argue that their right to excess proceeds is protected by federal law, and no state law may be passed or interpreted in such a way as to deny that right. But this is not what happened here. As already explained, respondents did have a constitutionally protected right to excess proceeds remaining after the tax-foreclosure sale of their real properties and the satisfaction of their tax debt and related costs. They had notice and an opportunity to begin the process of recovering those proceeds through the minimally burdensome completion of a one-page form. They failed to submit the form by the July 1st statutory deadline and, as a result, they failed to act to enforce that right through the exclusive statutory mechanism created by our Legislature. Simply put, respondents have not shown that MCL 211.78t or any part of the statutory scheme violates due process or the Takings Clause, and the Supremacy Clause has no application in the present case.

III.  CONCLUSION

As the *Rafaeli* Court recognized, a former property owner has a constitutional right to the monetary proceeds, if any, that exist after a foreclosure sale and satisfaction of tax debt and related costs.  In response to *Rafaeli*, our Legislature enacted a statutory scheme by which such owners can enforce their constitutional rights, and, as explained, this scheme passes constitutional muster.  Respondents failed to avail themselves of these statutory protections, and, as a result, they failed to enforce their constitutional rights.  The failure is theirs, not petitioner's or our Legislature's.

Affirmed.

/s/ Brock A. Swartzle
/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney