OSCN Found Document:Questions Submitted by: The Honorable Kendal Sacchieri, Oklahoma State Senate, District 43

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 Questions Submitted by: The Honorable Kendal Sacchieri, Oklahoma State Senate, District 43
2025 OK AG 10
Decided: 07/30/2025
OKLAHOMA ATTORNEY GENERAL OPINIONS
Cite as: 2025 OK AG 10, __ P.3d __

 

¶0 This office has received your request for an Attorney General Opinion in which you ask, in effect, the following questions:

1. Does the Fifth Amendment's Takings Clause--as recently construed by the U.S. Supreme Court in Tyler v. Hennepin County, 598 U.S. 631 (2023)--prevent county treasurers in Oklahoma from barring property owners from claiming the excess proceeds from a delinquent tax sale after the one-year period set forth in title 68, section 3131(D) of the Oklahoma Statutes?

2. May Oklahoma prevent property owners from assigning their right to excess proceeds to another entity or individual once the tax-sale process has begun, in accordance with section 3131(D), without violating the Takings Clause?

3. Does a county treasurer's failure to remit the amount of the taxpayer's additional outstanding tax liabilities to the Oklahoma Tax Commission in a timely manner, as required under section 3131(D), cause additional interest or penalties to stop accruing on the remaining tax debt?

I.
Summary

¶1 This opinion concerns the taxpayer's right to the remaining excess proceeds after a property sells at a delinquent tax sale for an amount greater than the tax debt owed. In Oklahoma, a property owner must claim any excess proceeds within one year. 68 O.S.2021, § 3131

II.
Background

¶2 Oklahoma places an annual tax on real property. 68 O.S.2021, § 310168 O.S.Supp.2024, § 310568 O.S.2021, § 3131

[a]ny remaining proceeds shall be held in the separate fund for the record owner of such land, as shown by the county records as of the date the county resale begins, to be withdrawn any time within one (1) year. . . . At the end of one (1) year, if such money has not been withdrawn or collected from the county, it shall be credited to the county resale property fund.

68 O.S.2021, § 3131

¶3 A time limit for collecting excess proceeds following a tax sale has been part of Oklahoma law for the past sixty years. The Legislature initially enacted a two-year time limit for claiming excess funds in 1965. Section 3131(D)'s predecessor statute provided that "the excess shall be held in a separate fund for the prior owner of such land to be withdrawn any time within two years." 1965 Okla. Sess. Laws ch. 501, § 2 (emphasis added). This two-year claim period stood unaltered for nearly five decades. In 2009, the Legislature amended section 3131(D), shortening to one year the period for owners to assert their claim to excess proceeds. See 2009 Okla. Sess. Laws ch. 191, § 3. The Legislature again amended section 3131(D) in 2014 by inserting the following provision limiting assignment of the right to excess proceeds: "No assignment of this right to excess proceeds shall be valid which occurs on or after the date on which the county resale began." 2014 Okla. Sess. Laws ch. 156, § 2.

¶4 Lastly, legislative amendments to sections 3131(C) and (D) in 2023 have set out a multi-step procedure that county treasurers must follow when a tax sale results in a surplus that exceeds the debt owed. 2023 Okla. Sess. Laws ch. 113, § 12. First, the county treasurer notifies the OTC of the excess within thirty days. See 68 O.S.Supp.2023, § 3131Id. § 3131(D). Then, "[u]pon timely notice of a liability from the [OTC], the county treasurer shall remit to the [OTC] the amount of the outstanding tax liabilities or the excess proceeds, whichever is less." Id. 

III.
Discussion

A. Section 3131(D)'s one-year requirement for collecting excess proceeds does not deprive a delinquent taxpayer of property without just compensation.

¶5 This opinion begins and ends with the principle that a government cannot take more property from a taxpayer than it is owed. At the same time, the vindication of even the most important rights demands diligence from the person who wishes to assert them. Recently, the U.S. Supreme Court unanimously struck down as violative of the Fifth Amendment's Takings Clause a Minnesota law that gave "[t]he former owner . . . no opportunity to recover th[e] surplus" after a forced sale for unpaid taxes. Tyler v. Hennepin Cnty., 598 U.S. 631, 635 (2023); see also id. at 634 ("Hennepin County, Minnesota, sold Geraldine Tyler's home for $40,000 to satisfy a $15,000 tax bill. Instead of returning the remaining $25,000, the County kept it for itself."). That egregious result would not happen in Oklahoma because section 3131(D) mandates that any excess proceeds "shall be held in the separate fund for the record owner of such land." (Emphasis added). In other words, Oklahoma does not and "could not use the toehold of the tax debt to confiscate more property than was due." Tyler, 598 U.S. at 639.

¶6 "The Takings Clause, applicable to the States through the Fourteenth Amendment, provides that 'private property [shall not] be taken for public use, without just compensation.'" Id. at 637 (quoting U.S. Const. amend. V); see also Okla. Const. art. II, § 24 ("Private property shall not be taken ... for public use without just compensation."). Property taxes "are not themselves a taking, but are a mandated 'contribution from individuals . . . for the support of the government . . . for which they receive compensation in the protection which government affords.'" Tyler, 598 U.S. at 637 (quoting Cnty. of Mobile v. Kimball, 102 U.S. 691, 703 (1881)). Oklahoma, like all States, "may . . . seize and sell property, including land, to recover the amount owed." Id. at 638; see also 68 O.S.Supp.2024, § 3105

¶7 Your question suggests section 3131(D) undermines the right to excess proceeds by limiting how long the taxpayer may delay in collecting them. The U.S. Supreme Court rejected this argument in Nelson v. City of New York, 352 U.S. 103 (1956). Nelson, "a property owner had almost two months after the city filed for foreclosure to pay off the tax debt, and an additional 20 days to ask for the surplus from any tax sale." Tyler, 598 U.S. at 644 (citing Nelson, 352 U.S. at 104 n.1). "No property owner requested his surplus within the required time." Id. Nonetheless, the owners argued that "they had been denied just compensation under the Takings Clause." Id. Importantly, the New York City ordinance did not "absolutely preclude[] an owner from obtaining the surplus proceeds of a judicial sale." Nelson, 352 U.S. at 110. Instead, it "simply defined the process through which the owner could claim the surplus." Tyler, 598 U.S. at 644. And the "owners did not take advantage of this procedure, so they forfeited their right to the surplus." Id. Consequently, the Court "found no Takings Clause violation." Id. (citing Nelson, 352 U.S. at 110).

¶8 The same principle applies to Oklahoma's excess-proceeds statute. Consistent with the Supreme Court's holding in Nelson, the State may require some degree of diligence from the former landowner. See Dani v. Miller, 2016 OK 35374 P.3d 779Texaco, Inc. v. Short, 454 U.S. 516, 526 (1982). If former property owners contend that Oklahoma's one-year limitation has caused them adversity, then "relief from the hardship imposed by a state statute is the responsibility of the state legislature." Nelson, 352 U.S. at 111. As a result, section 3131(D) merely sets forth an orderly procedure for collecting post-sale excess proceeds and does not violate the constitutional guarantee against depriving a taxpayer of property without just compensation.

B. Section 3131(D)'s limited restriction on a property owner's assignment of the right to excess proceeds once the tax sale has begun is not an unconstitutional taking.

¶9 Next, you ask whether Oklahoma may prevent property owners from assigning their right to excess proceeds in limited circumstances without violating the Takings Clause. Again, the answer is yes. "An assignment is the expressed intent of one party to pass rights owned to another." In re Kaufman, 2001 OK 8837 P.3d 84568 O.S.2021, § 3131

¶10 In a "classic taking," "the government directly appropriates private property for its use." Tahoe--Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 324 (citation modified). The Fifth Amendment (complemented by the Oklahoma Constitution's article II, section 24) promises to the taxpayer "an opportunity to recover the excess value" from the State. Tyler, 598 U.S. at 645. Oklahoma provides that opportunity through section 3131(D). But this guarantee plainly does not extend to every conceivable use or design that the owner might later wish for those same funds. "[A] mere unilateral expectation or an abstract need is not a property interest entitled to protection" in the constitutional sense. Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161 (1980). The Legislature's partial limitation on the assignment of proceeds does not "avoid paying just compensation" to the taxpayer. Tyler, 598 U.S. at 645. For that reason, section 3131(D)'s non-assignment provision is not an unconstitutional taking.

C. Because section 3131(D) makes the county treasurer responsible for remitting payments to the OTC once the subject property is sold, the owner does not bear the burden of accruing interest and penalties on additional outstanding tax liabilities.

¶11 Finally, you ask whether additional interest and penalties will stop accruing on an owner's outstanding post-sale tax liabilities where the county treasurer fails to transmit funds after receiving notice from the OTC. The answer is yes. To recap, section 3131 requires county treasurers to inform the OTC once any property "sells for more than the taxes, penalties, interest and cost due thereon"--that is, whenever excess proceeds remain after the tax sale. 68 O.S.Supp.2023, § 3131Id. § 3131(D). Following that determination, the county treasurer "shall remit" payment to the OTC, if necessary, from the available excess funds. Id.

¶12 "The taking of taxes, or the taxpayer's property for taxes, is an involuntary exaction by the state, and the tax-gathering authorities must stay strictly within the provisions of the law authorizing the collecting of such taxes or the taking of such property." Sherrill v. Deisenroth, 1975 OK 136541 P.2d 862See Trappe v. Freeborn, 1955 OK 259288 P.2d 1105see also Sherrill, 1975 OK 136

¶13 It is, therefore, the official Opinion of the Attorney General that:

1. Title 68, section 3131(D) of the Oklahoma Statutes does not violate the U.S Constitution or Oklahoma Constitution by requiring property owners to claim excess proceeds from a tax sale within one year. 

2. Title 68, section 3131(D) of the Oklahoma Statutes does not violate the U.S. Constitution or Oklahoma Constitution by limiting property owners from assigning their right to excess proceeds to third parties after commencement of the tax sale.

3. Title 68, section 3131(D) of the Oklahoma Statutes requires county treasurers to remit excess proceeds to the Oklahoma Tax Commission when necessary to satisfy additional outstanding tax liens on the subject property. Accordingly, a taxpayer will not bear the burden of accruing interest and penalties on those outstanding tax liabilities after the county sells the property. 

Gentner Drummond
Attorney General of Oklahoma

Cullen D. Sweeney
Assistant Solicitor General

FOOTNOTES

Shnier v. Valberg, 1941 OK 59110 P.2d 593Chisholm Trail Constr., L.L.C. v. Mueggeburg, 2014 OK CIV APP 108352 P.3d 1262see also 2017 OK AG 17

See, e.g., Franks v. Woodville Indep. Sch. Dist., 132 S.W.3d 167, 171 (Tex. App. 2004) ("In 1999, [Texas's excess-proceeds statutes] were amended to alter the applicable period from seven to two years.").

Tyler, "any proceeds in excess of the tax debt and the costs of the sale remain with the County, to be split between it, the town, and the school district." 598 U.S. at 635. That is, the State and its subdivisions kept all the money--a starkly different outcome from Oklahoma's section 3131.

Nelson turned on the adequacy of notice given to taxpayers before the start of foreclosure proceedings. The Supreme Court held that New York City's "application of the statute did not deprive appellants of procedural due process." Nelson, 352 U.S. at 109. The owners in Nelson raised the Takings Clause argument for the first time in their reply brief, and the Court "rejected this belated argument." Tyler, 598 U.S. at 644 (citing Nelson, 352 U.S. at 109). In Tyler, the Court squarely addressed a timely Takings Clause challenge while also affirming the soundness of its prior reasoning in Nelson. See Tyler, 598 U.S. at 643--45.

See, e.g., Alaska Stat. § 29.45.480(b) (six months); Ark. Code Ann. § 26-37-205(c) (two years); Conn. Gen. Stat. § 12-157(i)(2) (90 days); Ga. Code Ann. § 48-4-5(c) (five years); Idaho Code § 31-808(2)(c) (60 days); Ind. Code § 6-1.1-24-7(e)(2) (three years); Ky. Rev. Stat. Ann. § 91.517(3) (two years); Miss. Code Ann. § 27-41-77 (two years); Nev. Rev. Stat. § 361.610(4) (one year); N.M. Stat. Ann. § 7-38-71(C) (two years); N.D. Cent. Code § 57-28-20(3)(a) (90 days); R.I. Gen. Laws § 44-9-37 (five years); Tex. Tax Code Ann. § 34.04(a) (two years); Va. Code Ann. § 58.1-3967 (two years); Wash. Rev. Code § 84.64.080(10) (three years); W. Va. Code § 11A-3-65 (two years); Wis. Stat. § 75.36(2m)(b) (one year); Wyo. Stat. Ann. § 39-13-108(d)(iv)(C) (two years).

Johnson v. CSAA Gen. Ins. Co., 2020 OK 110478 P.3d 422

Strictissimi juris, Black's Law Dictionary (12th ed. 2024) ("Of the strictest right or law; to be interpreted in the strictest manner.").

 
 
 
 
 
 
 
 
 
 The Oklahoma Supreme Court
 2100 N. Lincoln Blvd., Suite 1
 Oklahoma City, OK 73105