NELSON et al., SUCCESSOR TRUSTEES, et al. *v.*
CITY OF NEW YORK.

No. 30.   Argued November 7, 1956.—Decided December 10, 1956.

*William P. Jones* argued the cause for appellants. With him on the brief was *Watson Washburn.*

*Seymour B. Quel* argued the cause for appellee. With him on the brief were *Peter Campbell Brown, Harry E. O'Donnell, Benjamin Offner* and *Joseph Brandwen.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

Appellants challenge as violative of the Fourteenth Amendment the application of Title D, Chapter 17, of the New York City Administrative Code to two improved parcels of land owned by them as trustees. The statute is the counterpart, operative in the City of New York, of the state tax lien foreclosure statute that was before us last Term in *Covey* v. *Town of Somers,* 351 U. S. 141.[1]

---

[1] The statute, §§ D17–1.0 *et seq.,* enacted in 1948, provides for the judicial foreclosure of tax liens on real property. The city treasurer files in the appropriate county clerk's office a list of all parcels in a section or ward of the City on which tax liens have been unpaid for at least four years. Tax liens include unpaid taxes, assessments or water rents, interest and penalties. This filing constitutes the

In 1950, the City proceeded to foreclose its lien on the first of these parcels, referred to as the 45th Avenue property, for water charges that had been unpaid for four years. These charges, for the years 1945 and 1946, amounted to $65;[2] the property was assessed at $6,000. The action was begun on May 20 with the filing of a list of 294 liened parcels, including the 45th Avenue property, in two sections of the Borough of Queens. Under the statute, this constituted the filing of a complaint.[3] The statute requires that notice of such a foreclosure proceeding be posted and published and a copy of the published notice mailed to the last known address of the owner of property sought to be foreclosed.[4] It is undisputed that the statutory notice requirements were satisfied in this case; a copy of the published notice was mailed to the address of the trust estate. However, appellants took no

filing of a complaint and commences an action against the property. Provision is made for notice by posting, publication and mail. The notice must be mailed to the property owner at his last known address. The prescribed notice is to the effect that, unless the amount of unpaid tax liens, together with interest and penalties, are paid within 7 weeks or an answer interposed within 20 days thereafter, any person having the right to redeem or answer shall be foreclosed of all his right, title and interest and equity in and to the delinquent property. Provision is made for entry of a judgment of foreclosure awarding possession of the property to the City and directing execution of a deed conveying an estate in fee simple absolute to the City. The City may retain the property or sell it and retain the entire proceeds.

[2] Appellants and the New York Court of Appeals used the figure $72.50. But the figures given in the affidavit of appellant Gerald D. Nelson (R. 68) yield a total of $65. Altogether, back charges, including those less than four years old, totaled $320.20. This includes $91.20 representing the second half of the 1948–1949 real estate taxes. No water charges were paid from 1945 on. All real estate taxes, with the exception noted, were paid.

[3] § D17–5.0.

[4] § D17–6.0.

action during the 7 weeks allowed for redeeming the property through payment of back charges nor during the 20 additional days allowed for answering the City's complaint. Judgments of foreclosure were entered by default, and on August 22 the City acquired title to the parcel. The property was later sold to a private party for $7,000, the City retaining all the proceeds.

On December 17, 1951, a similar *in rem* foreclosure action was commenced against 1,704 parcels in four sections of the Borough of Brooklyn, including appellants' second parcel, referred to as the Powell Street property. The four-year-old water charges on this parcel amounted to $814.50;[5] the property was assessed at $46,000. Again the statutory notice requirements were satisfied, and again judgment of foreclosure was entered by default. The City acquired title to the Powell Street property on May 19, 1952, and still retains it.

In November 1952, the appellants offered to pay with interest and penalties all amounts owing to the City on the two parcels. The offer was refused, and the appellants instituted a plenary action to set aside the City's deed to the Powell Street property and to recover the surplus proceeds from the sale of the 45th Avenue property. The Appellate Division of the New York Supreme Court affirmed the denial of the requested relief without prejudice to appellants' seeking to open their default by motions in the foreclosure proceedings. The appellants filed such motions, requesting the same relief they had sought in the plenary action. The case was submitted to the Supreme Court, Special Term, on opposing affidavits, and the motions were denied. The Special Term's orders were affirmed by the Appellate Division, 284 App. Div. 894, 134 N. Y. S. 2d 597, and the Court of

---

[5] For the years 1945 through 1947. No water charges had been paid since 1945, and the second half 1948–1949 real estate tax was not paid. The total delinquency was $2,681. R. 13–14.

Appeals, 309 N. Y. 94, 127 N. E. 2d 827. The Court of Appeals amended its remittitur to show that the federal questions here presented were decided adversely to appellants. 309 N. Y. 801, 130 N. E. 2d 602.

1. Appellants contend they received no actual notice of the foreclosure proceedings. The reason they assign is that the mailed notices were concealed by their trusted bookkeeper, who is also alleged to have concealed from them the nonpayment of the water charges. There is no claim that the bills for the water charges were not mailed to the estate. They assert that it was not until November 1952, when the judgments of foreclosure had long since become final, that they discovered the bookkeeper's derelictions, and thus were made aware of their loss. However, as we have said, it is not disputed that the notices were mailed to the proper address. Nor is this all. Appellants themselves placed in evidence as exhibits 1950–1951 and 1951–1952 real estate tax bills for the 45th Avenue property. These were concededly brought to the attention of appellant Gerald D. Nelson, the "active" or "managing" trustee. On the face of the bills appears the word "ARREARS," with a prominent black arrow pointing to it and beneath the arrow the statement, "The word ARREARS if it appears in the space indicated by the ARROW, means that, as of JUNE 30, 1950, previous TAXES, ASSESSMENTS or WATER CHARGES HAVE NOT BEEN RECORDED AS PAID. If these have not been paid since June 30, 1950, payment should be made IMMEDIATELY." [6] Furthermore, the

---

[6] The date on the other bill was June 30, 1951. Appellants introduced the tax bills as a basis for an argument that the City's error in continuing to bill them after the City had acquired title to the 45th Avenue property lulled them into thinking that all was well, so that they took no steps to protect the Powell Street property. The effect of the notice of arrears should, it seems, have been quite the opposite.

City's assistant corporation counsel stated in his affidavit that the tax bills for the Powell Street property each year from 1946 to 1953 contained a notice that the property was in arrears. Appellant Nelson stated that the bookkeeper "had been regularly presenting to deponent for payment all of the bills for real estate taxes which were paid through the first half of 1951–52 . . . ." [7] It is clear that the City cannot be charged with responsibility for the misconduct of the bookkeeper in whom appellants misplaced their confidence nor for the carelessness of the managing trustee in overlooking notices of arrearages.

Appellants make the further contention that the City officials should have known from the state of the records of the two parcels that mailed notice would probably be ineffective. That is, the fact that water charges were not paid while the much larger real estate taxes were paid should have indicated to the officials that something was amiss. They rely on *Covey* v. *Town of Somers, supra*. We cannot so hold. In the *Covey* case, there were uncontroverted allegations that the taxpayer, who lived on the foreclosed property, was known by the officials of a small community to be an incompetent, unable to understand the meaning of any notice served upon her; no attempt was made to have a committee appointed for her person or property until after entry of judgment of foreclosure in an *in rem* proceeding. The affidavit of the assistant corporation counsel here states that there are more than 834,000 tax parcels in the City, and on the facts of this case the City cannot be held to a duty to determine why a taxpayer neglects some taxes while paying others.

We conclude, therefore, that the City having taken steps to notify appellants of the arrearages and the fore-

---

[7] In addition, a deputy city collector annexed to his affidavit copies of letters sent to the trust estate on June 5 and July 9, 1951, advising that there had been double payments of the taxes on the 45th Avenue property.

closure proceedings and their agent having received such notices, its application of the statute did not deprive appellants of procedural due process.

2. Appellants also claim a denial of the equal protection of the laws in that the City officials had available to them other remedies for collecting taxes, which would not necessarily have resulted in forfeiture of the entire value of their property. Their theory is that the choice to proceed against their property under Title D, Chapter 17, was arbitrary. We find the contention without merit. The statute is explicit that when the strict foreclosure provisions of Title D, Chapter 17, are invoked, they must be used against all parcels in a section of the City on which charges have been outstanding for four years.[8] It is clear that the aim is to prevent precisely the kind of discrimination of which appellants complain. Appellants do not assert that the statute was not complied with in this regard.

3. In their reply brief, appellants urged that by reasons of the City's retention of property, in one instance, and proceeds of sale in the other, far exceeding in value the amounts due, they are deprived of property without due process of law or have suffered a taking without just compensation. They called our attention to *United States* v. *Lawton,* 110 U. S. 146. In affirming a judgment in favor of a foreclosed landowner for the surplus proceeds from the sale of his land, the Court there said: "To withhold the

---

[8] § D17–5.0, which provides for the filing of lists of delinquent property, provides further, "Each such list shall comprise all such parcels within a particular section or ward designated on the tax maps of the city, except those parcels excluded from such lists as hereinafter provided." The grounds for exclusion are (1) question raised as to the validity of the tax lien on the parcel, (2) and (3) accepted agreement to pay delinquent taxes in installments, and (4) tax lien on the property sold within two years and enforcement of the lien not completed.

surplus from the owner would be to violate the Fifth Amendment to the Constitution and to deprive him of his property without due process of law, or to take his property for public use without just compensation." 110 U. S., at 150. However, the statute involved in that case had been construed in *United States* v. *Taylor,* 104 U. S. 216, to require that the surplus be paid to the owner, and there the problem was treated as purely one of statutory construction without constitutional overtones.[9] But we do not have here a statute which absolutely precludes an owner from obtaining the surplus proceeds of a judicial sale. In *City of New York* v. *Chapman Docks Co.,* 1 App. Div. 2d 895, 149 N. Y. S. 2d 679, an owner filed a timely answer in a foreclosure proceeding, asserting his property had a value substantially exceeding the tax due. The Appellate Division construed § D17–12.0 of the statute [10] to mean that upon proof of this allegation a separate sale should be directed so that the owner might receive the surplus. What the City of New York has done is to foreclose real property for charges four years delinquent and, in the absence of timely action to redeem or to recover any surplus, retain the property or the entire proceeds of its sale. We hold that nothing in the Federal Constitution prevents this where the record shows adequate steps were taken to notify the owners of the charges due and the foreclosure proceedings. ·

It is contended that this is a harsh statute. The New York Court of Appeals took cognizance of this claim and

---

[9] See also *Chapman* v. *Zobelein,* 237 U. S. 135.

[10] Section D17–12.0 (a) provides in pertinent part, "The court shall have full power . . . in a proper case to direct a sale of . . . lands and the distribution or other disposition of the proceeds of the sale." By § D17–6.0 it is provided, "Every person having any right, title or interest in or lien upon any parcel . . . may serve a duly verified answer . . . setting forth in detail the nature and amount of his interest or lien and any defense or objection to the foreclosure."

spoke of the "extreme hardships" resulting from the application of the statute in this case.   But it held, as we must, that relief from the hardship imposed by a state statute is the responsibility of the state legislature and not of the courts, unless some constitutional guarantee is infringed. In this connection, we note that the New York Legislature this year has ameliorated to some extent the severity of Title D, Chapter 17.   Section D17–25.0 was added to the statute, permitting the reconveyance of property acquired and still held by the City upon payment of arrears, interest and the costs of foreclosure.   The City concedes this amendment applies to the Powell Street property.   Appellants have applied for a reconveyance of that property, and action has been held in abeyance pending the disposition of this appeal.

*Affirmed.*