In the Matter of GEORGE H. DWYER, Appellant, v. JOHN V. LINDSAY et al., Constituting the Board of Estimate of the City of New York, Respondents.

First Department, March 12, 1968.

*Saul S. Goldman* of counsel (*Isadore B. Hurwitz* with him on the brief), for appellant.

*Milton H. Harris* of counsel (*Stanley Buchsbaum* with him on the brief; *J. Lee Rankin, Corporation Counsel*), for respondents.

STEUER, J. We believe the dismissal of the petition to be improper and to necessitate a reversal of the order and vacating of the judgment entered thereon.

Petitioner was, prior to the proceeding mentioned below, the owner of the premises located at 2120 Seventh Avenue. The property is assessed at $145,000 and defendant cannot dispute that it is worth substantially in excess of that sum. Petitioner defaulted in the payment of taxes in the approximate sum of $26,000, and on March 8, 1965, the city foreclosed on its tax lien. Thereafter petitioner applied pursuant to section D17–25.0 of the Administrative Code of the City of New York for the city to release its interest in the property. His application was in proper form and he deposited the full amount of the delinquent taxes with interest and all proper charges, amounting to $50,467.06. The Corporation Counsel and the Department of Real Estate advised the Board of Estimate that the deposit was correct and the papers in order, and submitted to it the question of release of the property to the petitioner.

The matter came up for hearing before the board on April 14, 1966. The application was opposed by a parents association and a community planning board. The grounds of opposition were that part of the premises was rented to a saloon and that its presence was inimical to the pupils of Public School 154, which is contiguous to the property. It was urged on the board that the city should retain the property and oust the objectionable tenant. No other ground was advanced. The board voted to deny the application. The instant proceeding, under article 78 of the CPLR, seeks to compel the board to grant the petition.

The applicable statute governing redemption of properties taken in in rem foreclosure proceedings is section D17–25.0. The first paragraph is pertinent to the question here presented. Confining the language to what is essential to decision here also serves to clarify the meaning. It would then read: " The board of estimate, in its discretion, may * * * release all of the * * * interest of the city in any lands * * * acquired * * * by * * * action *in rem* * * * to any person * * * vested with the title thereto, provided, however, that no * * * release may be made of any such lands * * * which the board has assigned to any agency of the city ". No assignment to any agency of the city was made.

A brief legislative history may shed some light on the proper interpretation of the statute. Prior to 1956 the situation in regard to properties where taxes were in default was as follows: The owner could at any time prior to foreclosure redeem his property by paying the outstanding taxes plus interest and statutory charges. The procedure was purely ministerial. After foreclosure the former owner's rights were completely cut off and there was no procedure by which the property could be reclaimed. In that year an owner who had lost his property through foreclosure of the tax lien challenged the constitutionality of the statute (*New York City* v. *Nelson,* 309 N. Y. 94). The Court of Appeals upheld the statute but had occasion to remark that it made for hard cases. The court suggested that the Legislature should liberalize the right of redemption (pp. 96–97). On this suggestion the present statute was enacted. The determination of the Court of Appeals was upheld by the Supreme Court (352 U. S. 103). That court also concurred in the description of the then controlling statute as harsh and noted that the present statute relieved the inequity of its predecessor (p. 111).

It is the position of the respondents that the Legislature ameliorated the situation by giving the Board of Estimate at its whim or pleasure the right to relieve a delinquent owner from the consequences of foreclosure. We cannot subscribe to the propo-

sition that the board enjoys an unrestricted and unreviewable discretion in this respect. It could hardly be maintained that the members of the board could, if they so chose, reward political friends or punish political enemies if someone in either category sought to redeem his property. If the discretion does not go to this extent, there must be some limit to it. We submit that the limit is found in the statute itself, and we refer to the exception where the city has assigned the property to some agency of the city. In other words, if the city has a use for the property, it can deny redemption, and in making that determination its discretion is untrammelled.

Respondents would extend that discretion to where the board acts for a good purpose. Concededly, the city could not have accomplished its purpose, i.e., ousting the tenant deemed to be undesirable, by legal means without confiscating the fee. No one would claim that the city could assert that this was a purpose for which it could condemn the realty. So it is actually doing by indirection what it could not do directly, and in the process working a forfeiture of the kind that the statute was enacted to relieve against.

The order should be reversed and the petition reinstated.

McGIVERN, J. (dissenting). I dissent and would affirm.

The petitioner is the former owner of a two-story building located at a corner of Seventh Avenue and West 126th St., Manhattan, New York City. On March 8, 1965, for the nonpayment of taxes, this property was acquired by the city in an in rem foreclosure proceeding. At the time of the foreclosure, the principal tenant of the building was a bar and grill; this tenancy is now the subject of a proceeding in the Civil Court of the City of New York, wherein the city woud terminate the tenancy by virtue of the city's acquisition of the entire property.

On May 1, 1965, the petitioner filed a petition for redemption of title with the Board of Estimate, requesting a release of the city's interest in the property pursuant to section D17–25.0 of the Administrative Code of the City of New York. This section permits the former owner of foreclosed property, by grace, to petition the board for a return of the title to property, following the payment of the unpaid tax liens and other specified charges. But the statute explicitly says in subdivision a: " The board of estimate, *in its discretion, may* grant, convey and release all of the property ", (emphasis supplied) provided that the board has not already assigned the property to an agency of the city government.

The petition herein having been duly filed, in conformity with the code, it was wending its way through the official maze, with

a fair wind, until a resolution proposing the release of the property, finally came up for action before the Board of Estimate on April 14, 1966. The petitioner was not present, not having received notice. Nor was he entitled to any. Copies of the calendar are available to the interested public.

In considering the resolution, the board heard objections, principally articulated by a Mrs. Frances D. Turner, president of the Parents Association of the Harriett Tubman Public School 154, located in the middle of West 126th and 127th Streets, one of the entrances to which fronts directly on the rear of the subject tavern. Said Mrs. Turner: " This type of business attracts persons dealing in narcotics * * * around the tavern and the school. * * * Persons under the influence of alcohol are seen near the schoolyard and often gather in or near the side street entrance of the school, which is in the middle of the block directly behind the back of the tavern. * * * You can help us by not releasing the property concerning Item #21 to the owner for the purpose of continuing the said business or to any future owner who wishes to operate a business such as exists at present at said location." Thus spoke the president of the Parents Association of Public School 154. And her suggestion was embraced and seconded by the acting president of the Borough of Manhattan. Whereupon, the Clerk called the roll. All members present voted in the negative — 22 votes — and the resolution was lost.

In an article 78 proceeding to test these proceedings, Special Term has found the board's action not to have been arbitrary, capricious or an abuse of discretion. I agree.

The governing statute expressly conferred discretionary power on the Board of Estimate, to grant or deny an application for redemption of a lost title acquired by the city in an *in rem* foreclosure. That this was a purposeful grant of a discretionary power, cf. the city's legislative memorandum, submitted to the Governor before he signed into law chapter 17 of the Administrative Code, as amended. (N. Y. Legis. Annual, 1956, p. 197.) And we cannot by judicial counterstroke undo the handiwork of the Legislature. " It is not for the courts to correct omissions or defects in legislation. (*Triborough Bridge & Tunnel Auth.* v. *Crystal & Son,* 2 N Y 2d 961, 963.)" (*Carey* v. *Standard Brands,* 12 A D 2d 233, 236.) And we are enjoined to construe a statute " as it actually reads and not as it could, perhaps have been written." (*Longines-Wittnauer* v. *Barnes & Reinecke,* 15 N Y 2d 443, 465, FULD, J.) and as " the Legislature intended, and not as we would have written it had we been legislative drafts-

men.'' (*Thomas* v. *Melbert Foods,* 19 N Y 2d 216, 223, BURKE, J., dissenting opn.)

Nor can it be said that the board acted imprudently, precipitately or without sound reason. The records of the Police Department demonstrate that the subject tavern was the site of repeated and ever-recurrent offenses over the years. In taking the action it did, the board clearly had a high social objective in mind. And in no event can we substitute our judgment for that of the Board of Estimate.

Lastly, petitioner had no absolute right of redemption. As a foreclosed taxpayer, he was denuded of all '' right, title, interest, claim, lien or equity of redemption ''. (Administrative Code, § D17–12.0, subd. d.; *Nelson* v. *New York City,* 352 U. S. 103.) The only surviving right he had was by statutory sufferance to apply to the board for redemption of the foreclosed property. And the board, in its discretion, could accede or deny. In this case, the city fathers have rejected the petition, not without reason and with no suggestion at all of any impropriety. There is not the faintest intimation of any of the political shenanigans broached in the majority opinion. They are shying away from a ghost of their own conjuring.

Having in mind the plain language of the statute and the expressed design of those who drafted it, I deem unwarranted the construction urged by the majority.

The petitioner, of course, is entitled to a return of the sum which was required to be deposited by him in connection with his application for redemption of title. (See *Matter of City of New York [Scalere]*, 25 A D 2d 37.)

The disposition of Special Term was correct and the order and judgment appealed from should be affirmed.

STEVENS, J. P., TILZER and McNALLY, JJ., concur with STEUER, J.; McGIVERN, J., dissents in opinion.

Order and judgment (one paper), reversed, on the law, with $50 costs and disbursements to the appellant, and the petition reinstated.