Louis **BALTHAZAR**, and Doretta Balthazar, his wife, Plaintiffs,

v.

**MARI LTD.**, an Illinois corporation, and Allan L. Blair, John Boyle, Chief Judge of the Circuit Court of Cook County, Illinois, as representative of all chief judges of Circuit Courts in the State of Illinois, Defendants.

No. 69 C 898.

United States District Court
N. D. Illinois, E. D.
June 27, 1969.

Marshall Patner and Joseph Karaganis, Chicago, Ill., for plaintiffs.

Maurice P. Raizes, Chicago, Ill., for defendants Mari Ltd. and Allan L. Blair.

Dean Bilton, Asst. State's Atty. of Cook County, for defendant Judge Boyle.

Robert S. Cushman, of Spray, Price, Hough & Cushman, Chicago, Ill., amicus curiae.

Before KILEY, Circuit Judge, and PERRY and DECKER, District Judges.

PER CURIAM:

Plaintiffs Louis and Doretta Balthazar challenge the constitutionality of the Illinois statutes which authorize real property tax deeds.[1] Although the General Assembly has recently made minor changes in the legislation, the general statutory scheme has remained unaltered since 1872. Defendants include alleged systematic purchasers of delinquent property and the state judicial officers who are responsible for administering the statutes.

A three-judge district court was convened pursuant to 28 U.S.C. § 2284.[2] Asking that the complaint be dismissed, defendants maintain that plaintiffs fail to state a cause of action.[3]

The annual Illinois sale of tax delinquent real estate is commenced by the County Collector's publication of the tax delinquent list which specifies when application for a judgment of sale will be made to the Circuit Court. On that date, the Circuit Court sets a time for filing objections. If no objections are submitted, the Court then enters a judgment of sale. At least five days prior to the actual sale, the County Collector notifies each delinquent tax debtor by mail of the date on which the sale will begin. The real estate is then offered to the public by parcels. Bidding is restricted to the amount of overdue taxes and interest. The successful competitor is the bidder who permits the owner to redeem for the least penalty (interest) which cannot exceed 12% for each six months or fraction thereof during the two year redemption period.

Rather than receiving title to the land, the tax buyer obtains a certificate of purchase.[4] Within not more than five nor less than three months before the redemption period expires, the tax purchaser may file a petition in the Circuit Court requesting a tax deed. The tax purchaser must also serve notice of the filing and of the expiration date for redemption on the owner by mail. If the owner fails to redeem within the two years, the tax buyer may obtain a tax deed from the County Clerk. 1967 Ill.Rev.Stat. Ch. 120 ¶¶ 706, 711, 726, 729, 744, 747 & 749.

Rather than attempting to purchase real estate, bidders normally seek the penalty-interest. During the redemption period, the interest may total as much as 48% of the bid price. Since the owner can redeem by merely paying the delinquent taxes and interest, valuable land is routinely redeemed. In the rare case when an owner fails to redeem, however,

1. Although a majority of states enforce the payment of real estate taxes by public sale, five states apparently have legislation similar to that in Illinois. See page 3 *infra*. Generally, there is a ceiling on the bidding, so that potential purchasers can only compete by bidding the least penalty (or interest). See Ariz. Rev.Stat. § 42–393 et seq. (1956); Fla. Stat. §§ 194.01–194.63 (1958), F.S.A.; Mich.Stat. §§ 7.104–7.123 (1960), C.L. Mich.1948, §§ 211.60–211.77 [P.A.1954, No. 55]; N.J.Stat. §§ 54:5–19—54:5–31 (1960); S.C.Code §§ 65–2761—65–2779 (1962).

2. Under 28 U.S.C. § 1331, jurisdiction exists because a federal question is involved. See, *e. g.*, Georgia R. Co. v. Redwine, 342 U.S. 299, 304, 72 S.Ct. 321, 96 L.Ed. 335 (1952); Schneider v. District of Columbia, 117 F.Supp. 705, 718 (D.D.C. 1953).

3. Mr. Robert S. Cushman submitted a brief as amicus curiae, urging dismissal of the complaint. The amicus brief has been considered only as representative of the views of Interstate Bonding Corporation, a company which apparently purchases land at tax sales and often resells certificates of purchase to certain of the defendants. When requesting leave to participate in this action, Mr. Cushman acknowledged his association with Interstate Bonding Corporation and openly stated that he would support the constitutionality of the legislation.

4. See, *e. g.*, 1967 Ill.Rev.Stat. Ch. 120 ¶ 729:
"The county clerk shall make out and deliver to the purchaser of any lands or lots sold as aforesaid a certificate of purchase, * * * describing the land or lots sold as the same was described in the delinquent list * * *."

the purchaser may obtain the property for a fraction of its market value, thus gaining as a windfall all "surplus value" which exceeds the land's tax and interest liabilities.

The Balthazars claim that when their property was sold at a tax sale, they were deprived of the due process of law,[5] as guaranteed by the Fourteenth Amendment.[6] Plaintiffs assert that tax delinquent real property cannot be sold by the state to a private purchaser at a tax sale unless there is a provision for unrestricted public bidding based on the real estate's value.[7] The Illinois statutes, in contrast, limit the bidding to the total of the overdue taxes, interest, and penalties.

The purpose of a public sale, however, is to provide landowners with an opportunity to protect their real estate investment, even though their taxes may be in arrears. So long as owners have this opportunity, state legislation meets the due process requirements of the Fourteenth Amendment.[8] Thus, the Supreme Court recently held that states only need to give property owners adequate notice of their delinquency and of the foreclosure proceedings, explaining that:

"What the City of New York has done is to foreclose real property for charges four years delinquent and, in the absence of timely action to redeem or to recover any surplus, retain the property or the entire proceeds of its sale. We hold that nothing in the Federal Constitution prevents this where the record shows adequate steps were taken to notify the owners of the charges due and the foreclosure proceedings."[9]

Nelson v. New York City, 352 U.S. 103, 110, 77 S.Ct. 195, 199, 1 L.Ed.2d 171 (1956).[10]

5. The Supreme Court's recent garnishment decision, Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349, is inapplicable. "We deal here with wages—a specialized type of property presenting distinct problems in our economic system." 37 L.W. 4520.

6. Relying upon Supreme Court condemnation cases, plaintiffs also maintain that they were deprived of "just compensation" for their property. See, e. g., United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943); City of Cincinnati v. Vester, 281 U.S. 439, 50 S.Ct. 360, 74 L.Ed. 950 (1930); Dohany v. Rogers, 281 U.S. 362, 50 S.Ct. 299, 74 L.Ed. 904 (1930); Brown v. United States, 263 U.S. 78, 44 S.Ct. 92, 68 L.Ed. 171 (1923); Chicago Burlington and Quincy R. Co. v. City of Chicago, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897). These cases are inapplicable. Rather than taking private property for a public purpose, Illinois is here collecting taxes which are admittedly overdue. Bell's Gap Railroad v. Pennsylvania, 134 U.S. 232, 239, 10 S.Ct. 533, 535, 33 L.Ed. 892 (1890), declared that:
"The process of taxation does not require the same kind of notice as is required in a suit at law, or even in proceedings for taking private property under the power of eminent domain. It involves no violation of due process of law, when it is executed according to customary forms and established usages * * *."

7. For example, the existing Illinois system could be modified so that a public sale at the end of the redemption period recovered the property's surplus value for the original owner. Such a law would protect delinquent taxpayers who failed to act during the redemption period.

8. The Supreme Court has frequently upheld the constitutionality of tax delinquency statutes which do not automatically provide for a public sale of the property. See, e. g., Kentucky Union Co. v. Kentucky, 219 U.S. 140, 31 S.Ct. 171, 55 L.Ed. 137 (1911); King v. Mullins, 171 U.S. 404, 18 S.Ct. 925, 43 L.Ed. 214 (1898). Under specified circumstances, the statutes considered in the preceding cases permitted landowners to obtain a public sale. But the states required property owners to assume the initiative, as does the Illinois legislation's provision for a redemption period in which landowners may protect their investment from forfeiture.

9. Since New York may retain the full value of seized property, any state such as Illinois may elect to sell the land to anyone who is willing to pay the overdue taxes.

10. The challenged New York statutes authorized strict foreclosure unless a property owner submitted timely proof that

The Illinois redemption period permits delinquent landowners to protect their investments because at any time during the two years they may convey the property to a purchaser, subject to the outstanding certificate of purchase. Since potential buyers may then redeem, the sellers can negotiate a purchase price which includes the surplus value. In fact, the challenged statutes favor those landowners who are likely to be in arrears, either because they are poor or because they lack ready cash. Two years afford property owners ample opportunity to raise enough money to redeem or to canvass prospective buyers for the highest possible purchase price. In contrast, at a forced judicial sale, real estate is often sold for substantially less than its apparent market value.

Furthermore, the Illinois statutes are supported by the General Assembly's unassailable purpose to collect in an efficient manner all overdue real estate taxes. The bidding restrictions which are peculiar to Illinois and five other states [11] similarly promote a legitimate legislative goal—to facilitate redemption by delinquent taxpayers. If the competitors at the tax sale bid on the property's market value, a landowner would have to raise as much money as the highest bid in order to redeem. Moreover, the existing bidding system tends to depress the penalty-interest rate, thus protecting delinquent taxpayers from excessive charges.

■ In their complaint, the plaintiffs also ask this Court to invalidate a private agreement executed by the Balthazars in favor of one of the defendants. While there may be ancillary federal jurisdiction to determine the issue, we decline to exercise that jurisdiction since the plaintiffs' primary grievance fails to state a cause of action. Similarly, we do not decide any questions that plaintiffs may wish to raise concerning the procedural aspects of the Illinois tax deed statutes. If they so desire, the plaintiffs may present the procedural issues and the private agreement to the state courts for possible relief.

■ In conclusion, the Illinois tax delinquency statutes allow all real estate owners to recover the surplus value of their land. During the two year period of redemption, the owners can simply sell the property to a private purchaser subject to the tax certificate. The Illinois legislation is constitutional since delinquent landowners, including the plaintiffs, are adequately notified of their tax deficiencies and of any tax sale or foreclosure.

■ Unfortunately, the Illinois system severely penalizes all real estate owners who fail to redeem. The total forfeiture seems extremely harsh when overdue taxes amount to only two or three percent of the property's value.[12] But oppressive statutes must be tempered by the legislature, not the courts. In Nelson v. New York City, 352 U.S. 103, 110–111, 77 S.Ct. 195, 199, 1 L.Ed.2d 171 (1956), the Supreme Court concluded that:

> "It is contended that this is a harsh statute. The New York Court of Appeals took cognizance of this claim and spoke of the 'extreme hardships' resulting from the application of the statute in this case. But it held, as we must, that relief from the hardship imposed by a state statute is the responsibility of the state legislature and not of the courts, unless some constitutional guarantee is infringed."

Accordingly, an order has been entered today dismissing the complaint for failure to state a cause of action.

---

his land's value substantially exceeded the tax due. The plaintiffs before the Supreme Court failed to respond to foreclosure notices and thus lost their property even though the unpaid charges totaled less than 2% of the real estate's market value ($65 due on a $6,000 parcel, and $814.50 due on a second lot assessed at $46,000). See 352 U.S. 105–106 and 109–110, 77 S.Ct. 195, 1 L.Ed.2d 171.

11. See note 1 *supra.*

12. See note 10 *supra.*