*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DELORES PROCTOR, and all others similarly situated,

        Plaintiff-Appellant,

v

SAGINAW COUNTY BOARD OF COMMISSIONERS, TIMOTHY M. NOVAK, BAY COUNTY BOARD OF COMMISSIONERS, RICHARD F. BRZEZINSKI, GRATIOT COUNTY BOARD OF COMMISSIONERS, MICHELLE THOMAS, MIDLAND COUNTY BOARD OF COMMISSIONERS, CATHY LUNSFORD, ISABELLA COUNTY BOARD OF COMMISSIONERS, STEVEN W. PICKENS, TUSCOLA COUNTY BOARD OF COMMISSIONERS, PATRICIA DONOVAN-GRAY, and SHAWNA S. WALRAVEN,

        Defendants-Appellees.

UNPUBLISHED
September 10, 2025
9:00 AM

No. 349557
Tuscola Circuit Court
LC No. 18-030544-CZ

RONALD MAYNARD, and all others similarly situated,

        Plaintiff-Appellant,

v

COUNTY OF BENZIE, MICHELLE L. THOMPSON, COUNTY OF MANISTEE, RUSSELL POMEROY, COUNTY OF WEXFORD, JAYNE E. STANTON, COUNTY OF MISSAUKEE, LORI COX, COUNTY OF MASON, ELISABETH FRAZIER, COUNTY OF LAKE, BRENDA KUTCHINSKI, COUNTY OF

No. 349633
Newaygo Circuit Court
LC No. 18-020435-CZ

-1-

OSCEOLA, LORI LEUDEMAN, COUNTY OF
OCEANA, MARY LOU PHILLIPS, COUNTY OF
NEWAYGO, HOLLY MOON, and ANDREW
KMETZ,

            Defendants-Appellees.

_____

STEPHEN MORRIS and ROBIN MORRIS, and all
others similarly situated,

            Plaintiffs-Appellants,

v

COUNTY OF MONTMORENCY, JEAN M.
KLEIN, COUNTY OF ALPENA, KIMBERLY
LUDLOW, COUNTY OF OSCODA, WILLIAM
KENDALL, COUNTY OF ROSCOMMON,
REBECCA RAGAN, COUNTY OF ARENAC,
DENNIS STAWOWY, COUNTY OF CLARE,
JENNY BEEMER-FRITZINGER, COUNTY OF
GLADWIN, CHRISTY VAN TIEM, COUNTY OF
ALCONA, CHERYL FRANKS, COUNTY OF
OGEMAW, and DWIGHT MCINTYRE,

            Defendants-Appellees.

_____

LARRY CARLSON and MARY JO CARLSON, and
all others similarly situated,

            Plaintiffs-Appellants,

v

BRET E. WITKOWSKI, COUNTY OF BERRIEN,
COUNTY OF CASS, HOPE ANDERSON,
COUNTY OF KALAMAZOO, MARY BALKEMA,
COUNTY OF ST. JOSEPH, JUDITH RATERING,
COUNTY OF VAN BUREN, TRISHA NESBITT,
and KAREN MAKAY,

            Defendants-Appellees.

_____

No. 349636
Roscommon Circuit Court
LC No. 18-724294-CZ

No. 350394
Berrien Circuit Court
LC No. 18-000260-CZ

-2-

JOANNE SMITH, and all others similarly situated,

        Plaintiff-Appellant,

v                                                   No. 350406
                                                  Monroe Circuit Court
COUNTY OF WASHTENAW, CATHERINE       LC No. 18-141556-CZ
MCCLARY, COUNTY OF HILLSDALE,
STEPHENIE KYSER, COUNTY OF LENAWEE,
MARILYN J. WOODS, COUNTY OF MONROE,
and KAY SISUNG,

        Defendants-Appellees.

ON REMAND

Before: LETICA, P.J., and SWARTZLE and REDFORD, JJ.

PER CURIAM.

In *Proctor v Saginaw Co Bd of Comm'rs*, 340 Mich App 1, 16-17, 30-34, 40; 985 NW2d 193 (2022) (*Proctor I*), vacated in part ___ Mich ___; 12 NW3d 182 (2024), this Court concluded that plaintiffs[1] had causes of action regarding the collection of surplus proceeds realized from tax-foreclosure sales of property and further concluded that interest would potentially be due from the time of foreclosure. The Michigan Supreme Court, in *Proctor v Saginaw Co Bd of Comm'rs*, ___ Mich ___; 12 NW3d 182 (2024) (*Proctor II*), has remanded Part II-B and Part II-C of *Proctor I* to this Court for reconsideration in light of subsequent caselaw. After reconsideration, we remand these cases to the circuit courts for further proceedings consistent with this opinion.

## I. *PROCTOR I*, STATUTORY LAW, AND REMAND ORDER

In *Proctor I*, this Court set forth a brief factual background of this case:

> The underlying operative facts in each of these cases are not in dispute. Each named plaintiff failed to pay property taxes on his or her real property and forfeited their properties to their respective county treasurer for the total amount of those unpaid delinquent taxes, interest, penalties, and fees. Their defaults resulted in the county treasurers in the county where their properties were located to initiate tax foreclosures pursuant to MCL 211.78 *et seq*. The county treasurers foreclosed upon the properties and circuit court judgments of foreclosure were entered. Each plaintiff failed to redeem his or her respective property by the statutory deadline,

---

[1] This Court's affirmation of the denials of class certification that took place in the lower court, *Proctor I*, 340 Mich App at 40-41, was not disturbed by the subsequent caselaw.

-3-

resulting in the vesting of title to the properties in the respective county treasurers. The county treasurers thereafter sold the properties at auction. In accordance with the GPTA [General Property Tax Act, MCL 211.1 *et seq*.], each county retained the proceeds beyond those needed to satisfy outstanding taxes and associated fees or penalties. In each case, the named plaintiff or plaintiffs sued the involved county and the involved county's treasurer for the deprivation of such monies but also filed a putative class action against several additional counties and their respective treasurers in an attempt to obtain relief for purported similarly situated persons. In each case, the lower court granted summary disposition to the respective defendants under MCR 2.116(C)(7) and (8). Later, but before the filing of the briefs in these appeals, our Supreme Court decided *Rafaeli, LLC v Oakland Co*, 505 Mich 429; 952 NW2d 434 (2020), wherein it concluded that a government unit's retention of surplus proceeds after a tax-foreclosure sale amounts to an unconstitutional taking. Later still, in response to *Rafaeli*, the Michigan Legislature amended the GPTA to provide a limited mechanism for persons to obtain surplus proceeds after a tax-foreclosure sale. These appeals involve, among other issues, a consideration of whether *Rafaeli* or the amendments of the GPTA apply to plaintiffs' cases. [*Proctor I*, 340 Mich App at 7-10.]

In Part II-B of *Proctor I*, this Court concluded that plaintiffs, who had alleged state-law claims of unjust enrichment and inverse condemnation, "alleged viable claims of violation of their common-law property rights protected under Michigan's Takings Clause to collect the surplus proceeds that are realized from the tax-foreclosure sale of property." *Id*. at 17. To reach this conclusion, this Court relied largely on *Rafaeli*. As noted, in *Rafaeli*, 505 Mich at 484-485, the Michigan Supreme Court held that the retention of surplus proceeds after a tax-foreclosure sale amounts to an unconstitutional taking. This Court concluded that *Rafaeli* had limited retroactivity, meaning it should be applied to pending cases, including those of the named plaintiffs in this case, in which a challenge was raised and preserved. *Proctor I*, 340 Mich App at 23.

This Court also recognized that shortly after and in response to *Rafaeli*, the Michigan Legislature amended the GPTA to provide a mechanism for claimants to obtain the surplus proceeds after a tax-foreclosure sale in MCL 211.78t. The *Proctor I* Court discussed MCL 211.78t, which was added by 2020 PA 256 and states in relevant part:

> (1) A claimant may submit a notice of intention to claim an interest in any applicable remaining proceeds from the transfer or sale of foreclosed property under section 78m, subject to the following:

> (a) For foreclosed property transferred or sold under section 78m after July 17, 2020, the notice of intention must be submitted pursuant to subsection (2).

> (b) For foreclosed property transferred or sold under section 78m before July 18, 2020, both of the following:

> (*i*) A claim may be made only if the Michigan supreme court orders that its decision in *Rafaeli, LLC v Oakland County*, docket no. 156849, applies retroactively.

-4-

(*ii*) Subject to subparagraph (*i*), the notice of intention must be submitted pursuant to subsection (6).

\* \* \*

(6) For a claimant seeking remaining proceeds from the transfer or sale of a foreclosed property transferred or sold under section 78m pursuant to this subsection, the claimant must notify the foreclosing governmental unit using the form prescribed by the department of treasury under subsection (2) in the manner prescribed under subsection (2) by the March 31 at least 180 days after any qualified order. By the following July 1, the foreclosing governmental unit shall provide each claimant seeking remaining proceeds for the property and notifying the foreclosing governmental unit under this subsection with a notice relating to the foreclosed property in the form and manner provided under subsection (3). To claim any applicable remaining proceeds to which the claimant is entitled, the claimant must file a motion with the circuit court in the same proceeding in which a judgement of foreclosure was effective under section 78k by the following October 1. The motion must be certified . . . .

\* \* \*

(11) This section is the exclusive mechanism for a claimant to claim and receive any applicable remaining proceeds under the laws of this state. A right to claim remaining proceeds under this section is not transferable except by testate or intestate succession.

This Court in *Proctor I* made the following statement regarding the impact of MCL 211.78t on plaintiffs' claims:

The properties at issue in the present case were sold under § 78m "before July 18, 2020"; accordingly, MCL 211.78t(1)(b)(*i*) now provides the exclusive mechanism for the former property owners to claim the surplus proceeds from a tax sale. The statute indicates plaintiffs' claims would not be viable unless our Supreme Court issues a ruling that *Rafaeli* is to be applied retroactively. However, 2020 PA 256 had an effective date of December 22, 2020, and the Legislature did not specify that the new statute had retroactive application. Plaintiffs' lawsuits and claims of appeal were all filed well before the effective date. Further, despite the wording of MCL 211.78t(1)(b)(*i*), this Court is empowered to rule that *Rafaeli* applies to plaintiffs' claims because they were pending on appeal at the time of the *Rafaeli* decision and the enactment of 2020 PA 256. . . . MCL 211.78t(1)(b)(*i*) sets forth when a claim can be made, but plaintiffs had already made their claims before the *Rafaeli* decision and before the enactment of the statute. It would neither be logical nor just for the plaintiffs in *Rafaeli* to be entitled to relief, see *Rafaeli*, 505 Mich at 485, but the present plaintiffs denied relief, even though both sets of plaintiffs raised and preserved the pertinent issue. This result is further buttressed by the detailed analysis and conclusion in *Rafaeli*, which our Supreme Court reached by consideration and application of the constitutional rights that existed at

the time of the adoption of the 1963 Michigan Constitution. [*Proctor I*, 340 Mich App at 25-26 (emphasis omitted).]

The *Proctor I* Court ruled that plaintiffs had potentially viable *common-law claims* to collect surplus proceeds realized from tax-foreclosure sales of property. *Id*. at 40.

In Part II-C of the *Proctor I* decision, this Court concluded that plaintiffs were not entitled to "any recovery beyond the surplus proceeds from the tax-foreclosure sale," stating that a close reading of *Rafaeli* resulted in a rejection of the ability to recover any additional proceeds, such as the "loss of equity that resulted from the forfeiture and sale of the properties for less than market value." *Id*. at 27-30. Finally, the *Proctor I* Court concluded that plaintiffs had stated valid federal takings claims and that, accordingly, interest would be due "from the time of a taking," in accordance with United States Supreme Court caselaw. *Id*. at 30-34.

Subsequently, the Michigan Supreme Court considered an application and cross-application for leave to appeal the *Proctor I* decision and held the applications in abeyance pending its decision in the consolidated cases of *Schafer v Kent Co* and *Hathon v State of Michigan*, ___ Mich ___; ___ NW3d ___ (2024) (Docket Nos. 164975 and 165219). *Proctor v Saginaw Co Bd of Comm'rs*, 1 NW3d 250 (Mich, 2024). Following publication of its decision in *Schafer* and *Hathon*, the Supreme Court considered the applications in this case and issued the following order:

> By order of January 30, 2024, the application for leave to appeal the January 6, 2022 judgment of the Court of Appeals [in *Proctor I*] and the application for leave to appeal as cross-appellants were held in abeyance pending the decision in *Schafer v Kent Co*, (Docket No. 164975). On order of the Court, the case having been decided on July 29, 2024, . . . the applications are again considered and, pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we VACATE Part II-B and II-C of the judgment of the Court of Appeals and we REMAND this case to that court for reconsideration in light of *Schafer* and *Hathon v State of Michigan*, ___ Mich ___ (July 29, 2024) (Docket No. 165219). In all other respects, leave to appeal is DENIED, because we are not persuaded that the remaining questions presented should be reviewed by this Court. [*Proctor II*, 12 NW3d at 182.]

As indicated by the Supreme Court's order, this Court is tasked with reconsideration of the issues decided in Part II-B and II-C of *Proctor I* in light of *Schafer* and *Hathon*. In all other respects, leave to appeal the decision of this Court in *Proctor I* was denied.

## II. *SCHAFER*

In *Schafer*, the Michigan Supreme Court summarized its holdings as follows:

> 1. *Rafaeli* applies retroactively to claims not yet final on July 17, 2020, the date the opinion was issued.

> 2. MCL 211.78t, which establishes a procedure for processing claims made under *Rafaeli*, applies retroactively to claims arising prior to its enactment.

3. The new [two-year] limitations period in MCL 211.78*l* applies prospectively only to claims arising from tax-foreclosure sales that occurred after December 22, 2020 (the effective date of 2020 PA 256).

4. In order to be treated as constitutional, MCL 211.78t, in conjunction with applicable statutes of limitations, cannot apply retroactively to cut off claims for relief. Therefore, if filed within a "reasonable time" of today's decision, claims that arose before December 22, 2020, the date of 2020 PA 256's enactment, but expired between the date of enactment and the date of today's decision must be allowed to proceed, while still respecting the applicable statutes of limitations. Specifically, a claimant seeking surplus proceeds may pursue a claim if filed within the balance of time remaining under the applicable statutes of limitations as of December 22, 2020, running from the date of this opinion. [*Schafer*, ___ Mich at ___; slip op at 4 (citations omitted).]

MCL 211.78*l* states:

(1) If a judgment for foreclosure is entered under section 78k and all existing recorded and unrecorded interests in a property are extinguished as provided in section 78k, the owner of any extinguished recorded or unrecorded interest in that property shall not bring an action, including an action for possession or recovery of the property or any interests in the property or of any proceeds from the sale or transfer of the property under this act, or other violation of this act or other law of this state, the state constitution of 1963, or the Constitution of the United States more than 2 years after the judgment of foreclosure of the property is effective under section 78k. Nothing in this section authorizes an action not otherwise authorized under the laws of this state. An action to recover any proceeds from the sale or transfer of property foreclosed for nonpayment of real property taxes under this act must be brought as provided under section 78t.

(2) The right to sue recognized by this section is not transferable except by testate or intestate succession.

The *Schafer* Court indicated that "MCL 211.78t applies retroactively to all claims that arise from tax-foreclosure sales prior to *Rafaeli*." *Id*. at ___; slip op at 33. It stated that "[t]he statute asserts unambiguously that claims regarding sales occurring prior to *Rafaeli* 'must' comply with the statute, including certain notice requirements and procedures if *Rafaeli* is ever applied retroactively." *Id*. at ___; slip op at 36. The *Schafer* Court also discussed the various limitations periods:

Under the interworking provisions of 2020 PA 256, the Legislature prohibited relief for plaintiffs harmed by takings that occurred prior to *Rafaeli* unless and until this Court exercised its discretion to take a case such as *Schafer* and hold that *Rafaeli* applies retroactively. . . . While purportedly foreclosing relief until a Michigan Supreme Court decision, 2020 PA 256 also created a new two-year period of limitations for claims for surplus proceeds under MCL 211.78*l* that runs from the date of the judgment of foreclosure.

* * *

Although MCL 211.78t is retroactive under its plain text, significant issues surrounding the retroactivity of relevant provisions of 2020 PA 256 remain. Prior to the enactment of 2020 PA 256, *the statute of limitations to seek surplus proceeds as an unconstitutional taking was six years against county governments and three years against the state, with an additional one-year notice-of-intent requirement for claims against the state. By barring relief until Rafaeli is held retroactive but not providing any provision to extend expiring claims, MCL 211.78t may cut off the natural running of limitations periods for claimants whose claims expired between the enactment of MCL 211.78t and this Court's decision in* Schafer. Yet it is basic and well understood that due process prohibits amended statutes of limitations from retroactively extinguishing claims that were not yet time-barred and otherwise valid.

At the same time, 2020 PA 256 amended MCL 211.78*l* to provide a new two-year statute of limitations for all claims for surplus proceeds. . . . To avoid interpreting a statutory provision in a manner that would place it in serious constitutional jeopardy, and correspondingly in line with its plain text and established methods of statutory interpretation, *the proper reading of MCL 211.78l is to apply the new two-year statute of limitations prospectively.* [*Id*. at ___; slip op at 32-33, 37-39 (emphasis added).]

The Court reached the following conclusion regarding the applicable limitations periods going forward:

[W]e hold that claimants whose claims were cut short by the retroactive application of 2020 PA 256 will not be barred from relief under statutes of limitations if their claims are filed within the time they had remaining under the applicable statutes of limitations on December 22, 2020, the time 2020 PA 256 became law, and running from the date of this opinion. [*Id*. at ___; slip op at 40.]

The Court explained that

the remedy of providing to claimants the balance of their time would vindicate the express text and choice of the Legislature to provide claimants a full six- and three-year period, with an added one-year notice-of-intent period for claims against the state, to obtain relief for unconstitutional takings. [*Id*. at ___; slip op at 41.]

### III. APPLICATION OF *SCHAFER* TO *PROCTOR I*

Following the remand order in this appeal, this Court ordered supplemental briefing from the parties. In their supplemental briefing, plaintiffs concede that retroactive application of § 78t may preempt their ability to claim and receive any applicable surplus proceeds under state law, but contend that the statute does not preclude them from pursuing their federal claims under 42 USC 1983 for a taking without just compensation. Plaintiffs also contend they are entitled to the market value of the property taken plus interest from the date of the foreclosure sale.

-8-

First, we address the state claims for inverse condemnation and unjust enrichment raised by plaintiff. As previously noted, the *Schafer* Court concluded that *Rafaeli* was completely retroactive and "MCL 211.78t applies retroactively to all claims that arise from tax-foreclosure sales prior to *Rafaeli*." *Id*. at ___; slip op at 33. As such, this Court's decision that *Rafaeli* applies to plaintiffs was not disturbed by *Schafer*; however, any implication that MCL 211.78t did not apply to plaintiffs made by this Court in Part II-B of *Proctor I* is now without effect. MCL 211.78t also applies to plaintiffs. As such, plaintiffs must seek remaining proceeds under the procedure in MCL 211.78t.

In addition to the state claims, plaintiffs raised federal claims. In their supplemental briefing, plaintiffs contend that they may proceed on their federal claims regardless of any state mechanism for obtaining surplus proceeds and that interest would be due from the time of the taking. In support of this assertion, plaintiffs note that MCL 211.78t(11) states that "[t]his section is the exclusive mechanism for a claimant to claim and receive any applicable remaining proceeds *under the laws of this state*." (Emphasis added). We conclude these claims are premature.

Following its decision in *Schafer*, the Supreme Court issued a remand order in *Hathon*. In *Hathon v State*, ___ Mich ___, ___; 17 NW3d 686, 686 (2025), the Michigan Supreme Court stated that the new state statutory mechanism for obtaining surplus proceeds "works within the confines of existing tax-foreclosure lawsuits filed in circuit court by the foreclosing unit of government without claimants having to file a counterclaim or initiating a new lawsuit against any person or entity." The Court, therefore, concluded that "the Court of Claims' exclusive jurisdiction over claims against the state of Michigan under MCL 600.6419(1)(a) was not implicated with respect to claims for remaining proceeds under MCL 211.78t." *Id*. Of import to the present cases, the Court then stated:

> For a claimant to preserve their right to claim remaining proceeds under MCL 211.78t, they must initiate the statutory process by providing the foreclosing unit of government notice of their intent to seek remaining proceeds by March 31, 2025, using a form prescribed by the Department of Treasury. [*Id*. at ___; 17 NW3d at 686-687.][2]

The *Hathon* Court also added the following footnote:

> *We take no position as to the merits of the plaintiffs' assertion that they are also entitled to recover interest* and attorney fees or their claim that the sales commission under MCL 211.78t(9) is unconstitutional. *However, litigation of these claims is premature. Properly notified claimants must first utilize the statutory process provided by MCL 211.78t for recovery of remaining post-foreclosure sale proceeds before challenging the adequacy of or the application of that process as applied to them.* See, e.g., *In re Petition of Muskegon Co Treasurer for Foreclosure*, [348 Mich App 678; 20 NW3d 337 (2023), lv den ___ Mich ___; 11 NW3d 474 (2024), petition for cert pending]; *Nelson v City of New York*, 352

---

[2] The March 31, 2025 date derives from the language in MCL 211.78t(6) and the date of the *Schafer* decision. See MCL 211.78t(6) and *Schafer*, ___ Mich at ___; slip op at 41.

US 103; 77 S Ct 195; 1 L Ed 2d 171 (1956). [*Hathon*, ___ Mich at ___ n 1; 17 NW3d at 686 n 1 (emphasis added).]

In the cited case of *Nelson*, 352 US at 109-110, the United States Supreme Court addressed whether a taking occurred when there was a mechanism in place for obtaining surplus proceeds from a foreclosure sale but the plaintiffs did not take advantage of it. The Court stated:

> What the City of New York has done is to foreclose real property for charges four years delinquent and, in the absence of timely action to redeem or to recover[] any surplus, retain the property or the entire proceeds of its sale. We hold that *nothing in the Federal Constitution prevents this* where the record shows adequate steps were taken to notify the owners of the charges due and the foreclosure proceedings. [*Id*. at 110 (emphasis added).]

The United States Supreme Court emphasized that "we do not have here a statute which absolutely precludes an owner from obtaining the surplus proceeds of a judicial sale." *Id*.

The import of *Nelson* is that, upon enactment of MCL 211.78t and the release of the *Schafer* decision, an avenue for obtaining surplus proceeds did exist. Accordingly, using the reasoning of *Nelson* and following the Supreme Court's order in *Hathon*, plaintiffs, if they failed to avail themselves of the statutory scheme, did not incur a constitutional violation such that a federal takings claim was valid.

Admittedly, there is tension between the decision in *Nelson* and a more recent decision of the United States Supreme Court. In *Knick v Scott Twp, Pa*, 588 US 180, 190; 139 S Ct 2162; 204 L Ed 2d 558 (2019), the Supreme Court stated that "[t]he Fifth Amendment right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner." The *Knick* Court also stated:

> *The fact that the State has provided a property owner with a procedure that may subsequently result in just compensation cannot deprive the owner of his Fifth Amendment right to compensation under the Constitution*, leaving only the state law right. And that is key because it is the existence of the Fifth Amendment right that allows the owner to proceed directly to federal court under § 1983. [*Id*. at 191 (emphasis added).]

Recently, the United States Court of Appeals for the Sixth Circuit resolved this apparent contradiction, stating:

> [U]nlike the state laws at issue in *Knick*, Michigan's procedures for collecting the surplus do not compensate the property owner for a taking. They *prevent* a taking from happening in the first place. *A county that allows property owners to obtain any surplus after a foreclosure and keeps the residual only if the owners do not seek it does not commit a taking*. See *Nelson*, 352 US at 11; see also *Tyler* [*v Hennepin Co, Minn*, 598 US 631, 644; 143 S Ct 1369; 215 L Ed 2d 564 (2023)]. Had Howard followed the Act's procedures for claiming the surplus, only to be denied it, then she could immediately bring a takings claim under § 1983. That is

all that *Knick* guarantees. [*Howard v Macomb Co, Mich*, 133 F4th 566, 572 (CA 6, 2025) (second emphasis added).][3]

At first glance, this interpretation of *Knick* is somewhat strained, because the *Knick* Court stated:

[B]ecause the federal and nearly all state governments provide just compensation remedies to property owners who have suffered a taking, equitable relief is generally unavailable. As long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking. *But that is because . . . such a procedure is a remedy for a taking that violated the Constitution, not because the availability of the procedure somehow prevented the violation from occurring in the first place.* [*Knick*, 588 US at 201 (emphasis added).]

However, the *Howard* Court also cited the United States Supreme Court decision of *Tyler*, which postdates its decision in *Knick*. In *Tyler*, 598 US at 644-645, 647, the Court determined that the plaintiff had a valid Fifth Amendment takings claim for a foreclosed-upon home and distinguished *Nelson*. It cited *Nelson* for the proposition that if property owners do not take advantage of a procedure in place for obtaining surplus proceeds, no Takings Clause violation occurs. *Id.* at 644. And it stated that, "[u]nlike in *Nelson*, Minnesota's scheme provides no opportunity for the taxpayer to recover the excess value" of a seized home. *Tyler*, 598 US at 644.

Given the tax-scheme-specific nature of *Nelson* and *Tyler*, and given the Michigan Supreme Court's footnote in *Hathon*, we conclude that plaintiffs must indeed pursue remedies through the Michigan scheme set forth in MCL 211.78t before "challenging the adequacy of or the application of that process as applied to them," *Hathon*, ___ Mich at ___ n 1, or having a valid federal claim. See also *In re Muskegon*, 348 Mich App at 701 (no taking occurs when a property owner does not timely pursue a claim under the statutory scheme of MCL 211.78t).

In this case, the parties' supplemental briefing implies that plaintiffs have not followed the statutory procedure set forth in MCL 211.78t by giving the foreclosing governmental units ("FGU") notice by March 31, 2025, of their intent to seek remaining proceeds. Whether plaintiffs have complied with the § 78t is not part of the record evidence. Consequently, remand for a finding on this issue is appropriate.

Also relevant to the requirement for plaintiffs to follow the statutory procedure in § 78 is whether plaintiffs were "properly notified" after the *Schafer* decision about their rights, in accordance with the pertinent footnote in *Hathon*. Plaintiffs contend that it must be determined on remand whether they were properly notified in accordance with the pertinent footnote in *Hathon*. In contrast, defendants contend that plaintiffs were properly notified because they had "actual

---

[3] We note that "[t]he decisions of intermediate federal courts [such as the *Howard* court] are not binding on this Court, although they may be considered for their persuasive value." *People v Lucynski*, 509 Mich 618, 638 n 10; 983 NW2d 827 (2022).

notice" of their obligation to utilize the statutory process in § 78t by way of the enactment of 2020 PA 256 and the Supreme Court's remand order citing *Schafer*.

As previously noted, the *Hathon* order stated that "properly notified claimants must first utilize the statutory process provided by MCL 211.78t for recovery of remaining post-foreclosure sale proceeds before challenging the adequacy of or the application of that process as applied to them." *Hathon*, ___ Mich at ___ n 1; 17 NW3d at 686 n 1. The *Hathon* Court cited *In re Muskegon* when making this statement. *In re Muskegon* is factually distinct because that case involved foreclosures that occurred after the enactment of 2020 PA 256. As enacted by 2020 PA 256, certain pre-sale notice requirements pertaining to the procedure for obtaining surplus proceeds are set forth in the statutory mechanism. See MCL 211.78g(2) and MCL 211.78i(7). The *In re Muskegon* Court discussed the adequacy of these notice requirements. See, e.g., 348 Mich App at 697. In this case, these specific notice requirements are inapplicable because the sales occurred before the statutory enactments.

More recently, in another decision addressing foreclosure sales conducted after the enactment of MCL 211.78t, this Court addressed the notice due to a property owner regarding surplus proceeds:

> Given our Supreme Court's acknowledgment in *Rafaeli*, 505 Mich at 484, that a former property owner's right to surplus proceeds from a tax sale is a constitutionally protected right, distinct from the owner's interest in the real property and survives the foreclosure process, *we conclude that the former property owner is also constitutionally entitled to receive notice from the FGU regarding the right to claim any surplus proceeds*. This notice must be provided before the FGU can deprive the property owner of these surplus proceeds. [*In re Kent Co Treasurer for Foreclosure*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket Nos. 363463, 363766, 363808, and 364114) (emphasis added).]

The Court explained further:

> *We recognize that a notice of foreclosure proceedings alone fails to adequately inform property owners regarding the potential loss of any surplus funds. Moreover, such notices do not convey the necessary steps for property owners to safeguard their claims to these surplus proceeds.* To rectify this issue, we hold that it is imperative to provide explicit notifications that detail the right to claim any remaining proceeds, as outlined in MCL 211.78i, and the procedures specified in MCL 211.78t. These statutes enacted following *Rafaeli* ensure that property owners receive the minimum constitutionally sufficient notice prior to the withholding of any remaining or surplus funds. This approach aligns with our findings in *Muskegon Treasurer*, where we concluded that the legislative framework established to protect the rights affirmed in *Rafaeli* comports with the minimal requirements of due process. [*Id*. (emphasis added).]

We emphasize that *In re Kent* is not squarely applicable to this case because it involved properties foreclosed upon and sold after the effective date of the new statutory mechanism requiring specific pre-sale notice. However, that decision and the Supreme Court's analysis in the

*Hathon* order make clear that notice is an integral part of the ability of FGUs to retain surplus proceeds in general. Consequently, we remand the present cases to the appropriate lower courts to ascertain whether constitutionally sufficient notice was provided to plaintiffs in the context of the foreclosure sales preceding the enactment of the new statutory mechanism. In doing so, the lower courts are free to consider defendants' arguments regarding actual notice.

Finally, we address plaintiffs' assertion that they were also entitled to recover additional forms of compensation, such as "their loss of equity that resulted from the forfeiture and sale of the properties for less than market value." *Proctor I*, 340 Mich App at 27-30. In Part II-C of *Proctor I*, this Court rejected this claim. *Id*. In *Proctor I*, we concluded that *Rafaeli* required a rejection of these additional forms of compensation and that they were unavailable under either state or federal theories of takings. *Id*. at 29-30. The application of MCL 211.78t, as definitively required by *Proctor II* and *Schafer*, does not change this result. The statute states that a claimant may be compensated for "remaining proceeds," MCL 211.78t(1), and it defines "remaining proceeds" as follows:

> [T]he amount equal to the difference between the amount paid to the foreclosing governmental unit for a property due to the sale or transfer of the property under section 78m and the sum of all of the following:
>
> > (*i*) The minimum bid under section 78m.[4]
> >
> > (*ii*) All other fees and expenses incurred by the foreclosing governmental unit pursuant to section 78m in connection with the forfeiture, foreclosure, sale, maintenance, repair, and remediation of the property not included in the minimum bid.
> >
> > (*iii*) A sale commission payable to the foreclosing governmental unit equal to 5% of the amount paid to the foreclosing governmental unit for the property. [MCL 211.78t(12)(b).]

Consequently, plaintiffs' claims for additional forms of compensation remain unviable after *Schafer*.

---

[4] MCL 211.78m(16)(c) currently defines "minimum bid" and provides:

> "Minimum bid" is the minimum amount established by the foreclosing governmental unit for which property may be sold or transferred under subsections (1) to (3). The minimum bid must include all of the delinquent taxes, interest, penalties, and fees due on the property, and may include any additional expenses incurred by the foreclosing governmental unit in connection with the forfeiture, foreclosure, maintenance, repair, or remediation of the property or the administration of this act for the property, including, but not limited to, foreclosure avoidance, mailing, publication, personal service, legal, personnel, outside contractor, and auction expenses.

In conclusion, a claimant must preserve their right to claim remaining proceeds under MCL 211.78t by initiating the statutory process through provision of notice of their intent to seek remaining proceeds to the FGU. On remand, the circuit courts shall also apply the Supreme Court's new method of determining the limitations period, see, e.g., *Schafer*, ___ Mich at ___; slip op at 43 (remanding *Schafer* for further proceedings), giving due regard to the fact that tolling in this case may have been extended during the appellate proceedings, see *Yeo v State Farm Fire and Cas Ins Co*, 242 Mich App 483, 484; 618 NW2d 916 (2000). After assessing the applicable limitations period, the circuit courts shall make specific findings whether plaintiffs complied with the statutory requirements in § 78 of providing the FGU with notice of their intent to seek remaining proceeds. Relevant to this determination, the circuit courts shall determine whether the FGUs provided plaintiffs with constitutionally adequate notice, such that plaintiffs' obligation to utilize the statutory mechanism was triggered.

Reversed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Brock A. Swartzle
/s/ James Robert Redford